[No. 29097. Department Two. February 11, 1944.]

MARIE BALLARD, *Respondent,* v. YELLOW CAB COMPANY, *Appellant.*[1]

[1]Reported in 145 P. (2d) 1019.

*Adam Beeler*, for appellant.

*Grace O. Daily* and *Mifflin & Mifflin*, for respondent.

ROBINSON, J.—This action arises out of a traffic accident which occurred at the intersection of Fourth avenue and Pike street, in the city of Seattle, September 27, 1941, at 4:30 in the afternoon. The respondent was crossing Pike street from north to south in the pedestrian lane on the east side of the intersection. Appellant's cab was traveling west on Pike street and struck respondent while she was near the middle of the street and the middle of the pedestrian lane. The jury returned a verdict in her favor for the sum of $1,231. The usual post-trial motions were made

and denied, and, from the judgment entered on the verdict, this appeal was duly perfected.

■ The appellant's first assignment of error is as follows:

"The trial court erred in overruling the company's Motion for Judgment Notwithstanding the Verdict, or in the Alternative for a New Trial."

The pivotal, factual dispute between the parties was whether the respondent pedestrian or the driver of the cab was proceeding with the sanction of the green light. Both of them testified stoutly that they were, and each produced several corroborating witnesses. It appears that there was a former trial of this case before a different trial judge, in which the jury found a one hundred dollar verdict for the plaintiff. This was set aside and a new trial granted, on grounds not shown in this record. However, a number of witnesses who testified for the plaintiff in this trial testified for her in the other, and a comparison of the evidence given by them at the two trials casts grave doubt on their credibility. In a long and carefully prepared memorandum opinion announcing his decision on the posttrial motions, the trial judge went so far as to say that two of plaintiff's material witnesses were "completely impeached." On appeal, defendant contends that all of them were, and it is upon this ground that it is urged that the trial court erred in not granting the motion for judgment notwithstanding the verdict.

It would extend the length of this opinion to no good purpose if we should enter into the analysis of the evidence. We have examined it and found serious discrepancies in the testimony of the plaintiff's witnesses as given at the two trials. These, however, were clearly called to the attention of the jury in the process of impeachment, and its members received the usual instructions as to what they might do if they believed that a witness had testified falsely, etc., as well as the usual assurance from the trial court:

"You are the sole and exclusive judges of the evidence and of the credibility of the several witnesses and of the weight to be attached to the testimony of each."

When confronted by a question similar to that raised by appellant here, the supreme court of Iowa said, in *Shuck v. Conway*, 186 N. W. (Iowa) 858:

"It is contended by appellants that plaintiff's testimony on the last trial was different from his testimony as given on the former trial, and is inconsistent with his former evidence. The evidence given on the last trial is the evidence and any inconsistent statements therein given on the former trial are matters of impeachment, and the weight of his evidence is nevertheless for the jury."

See, also, to the same effect, *Curlee v. Reeves & Co.*, 85 Neb. 358, 123 N. W. 420; *Crowdus Drug Co. v. Van Doren*, 119 Okla. 55, 248 Pac. 319; and our own decision in *Keller v. Seattle*, 200 Wash. 573, 578, 94 P. (2d) 184.

It is evident that the trial judge had this rule in mind. After expressing his personal doubt as to the credibility of some of the plaintiff's key witnesses and his acute awareness of the fact that it was his duty to set aside the verdict if he believed substantial justice had not been done, he concluded his analysis of·the matter, as follows:

"It is the belief of the court that there is in this record believable testimony upon which the jury could have founded their verdict and the presumption is that they accepted that evidence. . . ."

So believing, it was clearly the duty of the trial judge to deny the defendant's motion for judgment notwithstanding the verdict.

Appellant's second assignment of error is as follows:

"The trial court erred in refusing to permit Dr. Jackson K. Holloway to testify as to the plaintiff's condition following the accident."

Immediately after the accident, the plaintiff was taken to Harborview hospital, arriving there at 4:39 p. m. This is a public institution. About 6 p. m., Dr. Holloway went to the hospital and made an examination of the plaintiff.

He was called as a witness for the defendant, and, when he was asked to describe plaintiff's condition, plaintiff's counsel interrupted, as follows:

"MISS DAILEY: Do you examine for the Yellow Cab Company? A. Yes, I do, sometimes. MISS DAILEY: And without the request of the patient you saw her? A. I am on the staff of the hospital, and I can go in any time I want to. MISS DAILEY: But on this occasion, without her request and without her privilege you made an examination of her? A. I would suppose you would say that. Q. At that particular time you were not on the service at the hospital? A. No. Q. And when you arrived to see this patient it was not at a call from the patient or the hospital, but at the request of the defendant? A. Yes. MISS DAILEY: Under those circumstances I am objecting to his testifying."

Whereupon the court interrogated the witness, as follows:

"Q. Tell me, please, when you went in to see the plaintiff in this case, Mrs. Ballard, did you advise her or state to her the reason for your being there, or the circumstances which brought you there? A. No. I went in with the nurse on the floor and the doctor in charge of the case, and we stated we wanted to examine her to learn the extent of her injuries, without making further explanation to her. Q. And when you examined her she was not aware of the fact that you were not appearing there as a representative of the hospital, but you were in fact appearing there representing the defendant in this case? A. I think you are correct, Judge. I don't think — she didn't raise the question at all, but — Q. She was not informed of it? A. No."

Plaintiff's counsel, in making her objection, relied upon Rem. Rev. Stat., § 1214 [P. C. § 7725], subd. 4, which reads as follows:

"A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient."

The appellant contends that the plaintiff was never Dr. Holloway's patient; that, in order to be so, he would have

to be selected by her, just as a client selects a lawyer; and that Dr. Holloway never attended the plaintiff or acquired any information which was necessary for him to prescribe or act for her. Hence, it is said the statute has no application.

We can conceive of situations where this argument would be quite persuasive. Suppose a physician driving along a highway should come upon a traffic accident and render emergency first aid services to an injured and unconscious woman. In such a case, it would seem that she would not be "his" patient, within the meaning of the statute. But the circumstances here are very different. The plaintiff was taken to a public hospital. Dr. Holloway came into her room and straightway began to examine her. No doubt, she took him to be a member of the hospital staff, as indeed he was, although, unknown to her, he was not then acting in that capacity. She submitted to his examination and by that act accepted him as her physician, and to all intents and purposes became his patient. Hence, on her side at least, there was that confidence which the statute was enacted to protect. This, in substance, is the theory upon which the trial judge made his ruling, and his reasoning is consistent with many decided cases. We have made an extensive search for authority on this particular point. The most apposite of the cases we have found and considered is *Smart v. Kansas City*, 208 Mo. 162, 105 S. W. 709, 123 Am. St. 415, 13 Ann. Cas. 932, 14 L. R. A. (N.S.) 565. We quote from pp. 192 and 193 of the state report:

"Besides all this there is no evidence in this record tending to show but what plaintiff thought and believed he was one of the attaches of the institution, and, as such, had the authority to do what he was doing there.

"It is not necessary in order to create the relation of physician and patient that he should actually treat the patient. If he makes an examination of the patient, with her knowledge and consent, she believing that the examination is being made for the purpose of treating her, then the relation is created by implication, and it is wholly im-

material what the secret object or purpose of the physician was in making it; and in the absence of evidence to the contrary, the plaintiff had the perfect right to assume and rely upon the assumption that the physicians who were apparently in charge of the hospital were rightfully there, and, as such, had the authority to examine and prescribe for her, and he will not afterwards be heard to say he was not connected with the institution and had no authority to examine or treat her. If such a thing as that could be done, then the privilege accorded the patient could be taken from her by trick or fraud."

For other cases to the effect that the general rule is that physicians fall within such statutes as our § 1214, though they are employed by a hospital and are not selected by the patient, see note in 22 A. L. R. at page 1217.

■ It further appears that counsel for appellant called and examined Dr. Holloway as a witness at the first trial of the case without any objection by the plaintiff. This fact, however, was not disclosed to the trial judge when he was struggling with the problem as to whether § 1214 applied, nor at any time until after verdict was rendered, in fact, not until the argument upon the motion for a new trial. Then it was brought out by appellant, and a waiver of the privilege of the statute claimed. The court refused to consider the claim, and it is contended that this was error. This ruling also was manifestly correct. The situation is analogous to that which would be presented if counsel should claim that error was committed in overruling a motion for a new trial made on the ground that he had forgotten to introduce a relevant document which he had in his brief case while the trial was in progress.

■ The third assignment of error is as follows:

"The trial court erred  by including, in instruction No. 6, subdivision (a), Section 45 of the traffic ordinance of the City of Seattle, relating to RECKLESS DRIVING."

This assignment cannot be considered because instruction No. 6 is not set out in the brief "in full," as required by the rules of court. Setting out a portion of the instruction does not comply with the letter of the rule, nor does

it comply with its purpose. Whether or not a portion of an instruction is erroneous must be determined in the light of its context.

█ The fourth assignment of error is as follows:

"The trial court erred in the giving of instruction No. 9, which reads:

" 'A pedestrian entering a street intersection under the direction of a traffic officer or in obedience to a traffic signal has the right of way and it continues until he reaches the other side of the street, and the fact that the signal has changed, giving traffic in the other direction notice to proceed, does not give them the right of way over the pedestrian first entering the street crossing, and the one first entering has the right to presume that he can pass over in safety and is not required to exercise continuous and extra observation to avoid vehicles using the street.' "

In discussing this assignment, appellant says that it does not object to the instruction on the ground that it is legally erroneous, but on the sole ground that it was wholly inapplicable, because:

"It was the plaintiff's theory throughout that the traffic signal light was green at the time she stepped from the sidewalk onto the street and remained green continuously up to the time of the accident."

The respondent contends that this statement of her theory is inaccurate. However that may be, there is evidence in the case from which the jury could find that the signal changed while she was en route on the crossing, and it was not error on the part of the trial court to anticipate that it might so find.

█ The fifth and last of appellant's assignments of error is as follows:

"The trial court erred in refusing to submit to the jury appellant's requested instructions Nos. 1, 2, 6, and 7."

We have carefully examined the record as to the exceptions taken with reference to instructions given or refused, and find no exceptions whatever were taken as to the court's failure to give defendant's requested instruc-

tions Nos. 1, 6, and 7. The trial court was, therefore, justified in assuming the defendant's counsel had concluded that, in view of the instructions actually given, the giving of his requested instructions Nos. 1, 6, and 7 was unnecessary.

As to requested instruction No. 2, the situation is this: Defendant's counsel read the instruction to the court and said: "We except to the refusal to give that instruction," and nothing more. We quote headnote [5] of *Hansen v. Columbia Breweries, Inc.,* 12 Wn. (2d) 554, 122 P. (2d) 489:

"Error cannot be predicated upon the trial court's refusal to give requested instructions, where the exception to such refusal was general and did not state any reason therefor."

A number of cases in support of that rule are cited in the text of the opinion.

Finding no error, the judgment appealed from is affirmed.

SIMPSON, C. J., MILLARD, BLAKE, and MALLERY, JJ., concur.