[Nos. 574-41156-1,    Division One—Panel 2,    November 16, 1970.]
41157-1.

THE STATE OF WASHINGTON, *Respondent,* v. NORMAN ALLEN
GIBSON *et al., Appellants.*

*Stern, Gayton, Neubauer & Brucker* and *Thomas H. S.
Brucker,* for appellants (appointed counsel for appeal).

*Charles O. Carroll, Prosecuting Attorney,* and *Jerry Brian Riess, Deputy,* for respondent.

UTTER, J.—Two brothers, Norman and Phillip Gibson, were charged with and convicted of assault. They raise two questions on appeal. These are, whether the court erred in admitting a police guard's testimony regarding a statement made by Norman Gibson to a doctor while the guard was present and whether the admission of this statement was error requiring reversal of the convictions of the two brothers. We hold the physician-patient privilege forbids the use of the statement of Norman Gibson and that as to him, a reversal of the verdict and new trial are necessary. We further hold its admission was not error as to Phillip Gibson and affirm that conviction.

The victim was shot in the back of the head after entering a new, yellow automobile to talk with the Gibson brothers. His testimony was that he was robbed and then shot by Phillip. Norman was arrested 2 days later and advised of his rights. At that time, the arresting officer testified he noticed severe burns on Norman's wrists and hands. The officer then took Norman to the city dispensary for the purpose of determining his proper placement in a cell. The police procedure required a police officer to remain with the prisoner at all times in the dispensary.

The doctor, with the officer present, asked Norman how he received the burns. "He replied that it was none of her business, that he wasn't going to tell her right in front of [the officer] . . ." He was then asked when the burns were received and told her, "two days ago."

The next day, the victim identified a yellow automobile with the seats burned away, as the car in which the assault occurred. The victim's watch and cigarette lighter were found in this car.

At trial, an alibi that the defendants were home on the night of the crime was offered and Norman Gibson's sister

testified he received the burns building a fire in the family fireplace. Neither defendant testified.

■ The physician-patient privilege in our state is statutory in nature. The civil statute (RCW 5.60.060(4)) has been held to apply to criminal cases by virtue of RCW 10.58.010, giving the patient the right to elect to claim the privilege. In criminal cases, RCW 10.52.020 also protects physicians from testifying as to information received from the defendant by virtue of their profession. *State v. Miller*, 105 Wash. 475, 178 P. 459 (1919).

■ Actual treatment is not necessary; the only requirement for the relationship to arise by implication is that the patient believe the examination is being made for the purpose of treatment. *Ballard v. Yellow Cab Co.*, 20 Wn.2d 67, 145 P.2d 1019 (1944). If consulted for treatment, it is immaterial by whom the doctor is employed. *State v. Sullivan*, 60 Wn.2d 214, 373 P.2d 474 (1962); C. McCormick, Law of Evidence § 102 (1954).

■ Where a patient makes admissions to his physician in respect to the time when an alleged injury was received, the admissions are privileged if they are necessary to obtain professional advice or treatment. The fact that the statements were necessary to receive treatment may be inferred from the circumstances without formal proof. *State v. Miller, supra* at 480; 3 B. Jones, The Law of Evidence § 843 (5th ed. S. Gard 1958). The record supports a conclusion that Norman Gibson was taken to the jail physician to obtain treatment, and the questions asked him by the physician were for the purpose of treatment.

All information, including but not limited to, statements of the patient and oral evidence of the physician is covered by the privilege. *Randa v. Bear,* 50 Wn.2d 415, 312 P.2d 640 (1957); *Wesseler v. Great N. Ry.,* 90 Wash. 234, 155 P. 1063, 157 P. 461 (1916). Ordinarily, the presence of a casual third person, overhearing the communication, with or without the knowledge of the patient, vitiates the privilege, as it is designed to forbid only compulsory disclosure by the

person to whom the confidence is extended. 8 J. Wigmore, Evidence § 2381 (1961).

C. McCormick, Law of Evidence § 104 (1954) notes, "if the third person is present as a needed and customary participant in such consultation, the circle of confidence may be reasonably extended to include him and the privilege will be maintained."

The legislative purpose, as noted in *Randa v. Bear, supra* at 422, was to foster the physician-patient relationship by inspiring confidence in the patient and encouraging him to make a full disclosure to the physician of his symptoms and condition, free of the worry that an embarrassing condition might become public knowledge. The extension of the privilege to include third persons who are necessarily present is consistent with this legislative purpose. This holding is supported by 3 B. Jones, The Law of Evidence § 848 (5th ed. S. Gard 1958, Supp. 1970), where it is noted:

> The privilege of nondisclosure may be claimed by the patient notwithstanding the presence of a third person during the communications between patient and physician—e. g., where a friend of the patient accompanied him and was present during the examination, [w]here a guard was present pursuant to the command of public authorities while a physician is examining the patient, or where an assistant of the physician was necessarily present.

*See People v. Decina,* 2 N.Y.2d 133, 157 N.Y.S.2d 558, 138 N.E.2d 799, 63 A.L.R.2d 970 (1956).

■ In *Decina,* the court held the privilege applied to a case where an officer was necessarily present at the time a prisoner was being examined by a physician and noted:

> The true test appears to be whether in the light of all the surrounding circumstances, and particularly the occasion for the presence of the third person, the communication was intended to be confidential and complied with the other provisions of the statute.

Considering our state's legislative intent, we believe the term "physician" used in RCW 5.60.060(4) should be construed to include agents of the physician who are present. 8

J. Wigmore, Evidence § 2381 (1961). The officer may be deemed to be an agent of the physician, present for the physician's protection as well as the detention of the prisoner.

There is authority to the contrary as noted in McCormick. An annotation[1], dealing with some cases of this nature, indicates the states are roughly divided on the question. Those states reaching a different holding generally analyze the problem on the basis of what specific persons were named in the statute as witnesses intended to be silenced. The legislative intent indicated by our court, we believe, compels a broader analysis of the scope of the privilege in terms of whether the patient intended the communication to be confidential in light of all the surrounding circumstances, including the occasion for the presence of the third person.

The admissibility of the evidence was the subject of two pretrial rulings by the trial court. Although there was no objection at the time of trial, the defendant was not required to so object as the matter had already been clearly brought to the attention of the trial court and the trial court's ruling already unmistakably indicated what his ruling on the objection would be. *State v. Poe,* 74 Wn.2d 425, 445 P.2d 196 (1968); *State v. Michaels,* 60 Wn.2d 638, 374 P.2d 989 (1962).

The state argues the error, if any, was harmless error in light of the alibi offered by Norman Gibson. The state's introduction of the testimony that the burns were received the day of the offense was relevant to the issue of Norman Gibson's presence in the car which was later found to be burned. As such, it forced the defendant to come forward with an excuse which the jury was free to believe or disbelieve. The court cannot say, in light of the alibi offered, that there is no reasonable possibility the evidence complained of might have contributed to the conviction or that there can be no rational conclusion reached except that he was guilty as charged. *State v. Johnson,* 1 Wn. App.

---

[1]Annot., 47 A.L.R.2d 742 (1956).

553, 556, 463 P.2d 205 (1969). We cannot, therefore, hold the error was harmless.

Phillip Gibson claims his conviction should be reversed inasmuch as his brother Norman's statement implicated him while denying him his constitutional right to confrontation and relies on *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968) to sustain his position.

In *Bruton* and *Roberts v. Russell,* 392 U.S. 293, 20 L. Ed. 2d 1100, 88 S. Ct. 1921 (1968), the court speaks of denial of the right to confrontation in the situation where the jury might consider a non-testifying codefendant's extra-judicial statements which implicate or incriminate another defendant. We have previously set out Norman Gibson's alleged admission in full. It does not mention or incriminate either directly or by implication his brother Phillip. *Bruton* does not apply.

The judgment as to Norman Gibson is reversed and remanded for new trial. The judgment as to Phillip Gibson is affirmed.

HOROWITZ, A. C. J., and WILLIAMS, J., concur.

Petition for rehearing denied December 8, 1970.

Review denied by Supreme Court January 19, 1971.