THE STATE OF WASHINGTON, *Respondent,* v. JEANETTE
DAWN CAHOON, *Appellant.*

*Hugh Spall,* for appellant (appointed counsel for appeal).

*David A. Pitts, Prosecuting Attorney,* and *Thomas A. Haven, Deputy,* for respondent.

SHIELDS, J.—Jeanette Cahoon was convicted of unlawful possession of cocaine, methamphetamine, and over 40 grams of marijuana. She appeals, contending evidence of the drugs should have been suppressed because their discovery violated: (1) her constitutional right of privacy; and (2) the physician–patient privilege. She also contends there was insufficient evidence she possessed more than 40 grams of marijuana. We affirm.

In the early evening of May 23, 1988, emergency medical technicians (EMT) Steve Engle and Thomas Cameron and paramedic Keith Axthelm responded to an ambulance call from Ms. Cahoon's home. EMT Engle was also an off–duty police officer for the City of Ellensburg. Ms. Cahoon was found in her yard. She told the EMT's she had taken "crank".[1] The EMT's had been taught the importance of obtaining the drug ingested and transporting it to the hospital, to aid the physicians in rendering medical care. Consequently, the EMT's asked Ms. Cahoon where the drug was located. EMT Engle testified she told them the "crank" was in the kitchen, and gave them permission to enter the home and search for it. Ms. Cahoon testified she only gave them permission to search the specific cabinet in which the "crank" was located. The EMT's searched several cupboards and found marijuana and cocaine as well as the "crank". The marijuana and cocaine were not in the same cupboard as the "crank", nor were they in open view. Upon discovering the drugs, EMT Engle called the sheriff's office. Sergeant John Jewett, of the Kittitas County Sheriff's Department, responded and met Ms. Cahoon at the hospital where he advised her of her rights. She refused to consent to a search of the house. A search warrant was later obtained and executed. In addition to the cocaine, methamphetamine, and marijuana, the search uncovered drug

---

[1]"Crank" is a slang term for methamphetamine.

paraphernalia, 10 to 15 prescription bottles with labels removed, and an illegal, semi–automatic, sawed–off shotgun.

Ms. Cahoon's motion to suppress her statements and the evidence found in her home was denied. At trial, only two witnesses testified: Sergeant Jewett and John Kearns from the Washington State Patrol Crime Laboratory. Although EMT Engle testified at the CrR 3.5/3.6 hearing, he did not testify at trial.

Ms. Cahoon first assigns error to the court's denial of her motion to suppress the physical evidence, because her constitutional right to privacy was violated. She asserts the Fourth Amendment and Const. art. 1, § 7 protect citizens from unreasonable searches disturbing their right to privacy, *see State v. Bell,* 108 Wn.2d 193, 737 P.2d 254 (1987), and the right to privacy pertains to one's medical condition. *See Jeffers v. Seattle,* 23 Wn. App. 301, 597 P.2d 899 (1979). She further asserts the communication of her medical condition to the EMT's was protected by this right, and her consent to enter her home to retrieve the suspected substance was for the sole purpose of receiving medical treatment. She also contends EMT Engle's report to law enforcement authorities breached her privacy and resulted in the issuance of the search warrant. She argues the entire quantum of physical evidence obtained in the search is the "poisonous fruit" of a violation of her constitutional right of privacy in her medical condition and should be suppressed.

■■ As to the initial entry of the home, the court in *State v. Loewen,* 97 Wn.2d 562, 647 P.2d 489 (1982) established a 2–prong test to determine whether a warrantless search is reasonable in a medical emergency situation: (1) the officer must be motivated by a perceived need to render aid; and (2) a reasonable person under the circumstances would have thought an emergency existed. Once the 2–prong test is met, police officers may make warrantless searches and the resulting evidence will be admissible, even when the defendant denies consent. *See also State v.*

*Raines,* 55 Wn. App. 459, 778 P.2d 538 (1989), *review denied,* 113 Wn.2d 1036 (1990); *State v. Lynd,* 54 Wn. App. 18, 771 P.2d 770 (1989). Here, both prongs of the test were met. Even if EMT Engle exceeded the scope of consent, the evidence found was admissible because an emergency existed. That evidence, when turned over to law enforcement personnel, remains admissible. *See State v. McAlpin,* 36 Wn. App. 707, 714, 677 P.2d 185, *review denied,* 102 Wn.2d 1011 (1984). In *Bell,* fire fighters entered a home to fight a blaze. They did not have consent to do so from the homeowner. During their subsequent search of the home, they discovered marijuana plants. They turned the information over to the police who, without a search warrant, searched and seized the evidence. The court held the evidence was admissible based on the "plain view" exception. The court found the fire fighters had a prior justification for the intrusion; they inadvertently discovered evidence known to be incriminating.

Here, the EMT's had a prior justification for the intrusion into the home, either on a theory of consent or emergency. In the search for methamphetamines, they inadvertently discovered other drugs and knew they had incriminating evidence before them. Unlike *Bell,* upon receiving the information, the sheriff's office obtained a search warrant before any further search of the home was made. The trial court did not err in admitting the physical evidence.

Ms. Cahoon also argues the court erred in admitting her statements made during the execution of the search warrant, because they were fruit of the illegal search. However, having found neither the initial warrantless search nor the search pursuant to the execution of the search warrant illegal, her statements were properly admitted.

Alternatively, Ms. Cahoon contends the court erred in admitting her statements made to EMT Engle, because they were protected by the physician–patient privilege. At the CrR 3.5/3.6 hearing, the medical program director for the local hospital testified he supervises the EMT's and

establishes the protocol or standing orders which instruct the EMT"s how to proceed in a medical emergency. Based on this testimony, Ms. Cahoon asserts EMT"s are agents of a physician; therefore, the information conveyed to them by her was privileged. She relies on *State v. Gibson,* 3 Wn. App. 596, 476 P.2d 727 (1970), *review denied,* 78 Wn.2d 996 (1971). She claims EMT Engle breached the physician–patient privilege when he reported the incident to law enforcement. She thus contends suppression of her statements, and all evidence obtained because of them, is the appropriate remedy.

Ms. Cahoon's argument raises two questions: (1) Do statements made to EMT"s and paramedics fall within the physician–patient privilege; (2) even if they do fall within the privilege, can they still be used as the basis for probable cause and the issuance of a search warrant?

RCW 5.60.060(4) reads in pertinent part:

[A] physician or surgeon or osteopathic physician or surgeon shall not, without the consent of his or her patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him or her to prescribe or act for the patient . . ..[2]

RCW 5.60.060(4) pertains only to information acquired by a physician; it makes no reference to information acquired solely by an agent of a physician.

In *Gibson,* a jail physician attended an inmate. A security guard in the room overheard the conversation between the physician and patient/inmate. The court held the security guard, as well as the physician, could not testify as to what was said. The court reasoned:

[W]e believe the term "physician" used in RCW 5.60.060(4) should be construed to include agents of the physician *who are present.* The officer may be deemed to be an agent of the physician, present for the physician's protection as well as the detention of the prisoner.

---

[2]This statute is made applicable to criminal actions by virtue of RCW 10.58-.010, which reads:

"The rules of evidence in civil actions, so far as practicable, shall be applied to criminal prosecutions."

(Citation omitted. Italics ours.) *Gibson,* at 599–600. Thus, when an attending physician's agent is present with the physician, that agent cannot testify as to the medical information acquired. *Gibson* does not indicate that an EMT, acting without a physician present, can acquire information which is privileged. Orland & Tegland, *The Federal Rules of Evidence: Washington Follows the Federal Model,* 15 Gonz. L. Rev. 277, 330 (1980) cite *Gibson* for the proposition that the privilege pertains to third persons who form "part of the entourage of the physician." *See also State v. Espinosa,* 47 Wn. App. 85, 89, 733 P.2d 1010 (1987). In *State v. McCoy,* 70 Wn.2d 964, 425 P.2d 874, *cert. denied,* 389 U.S. 873 (1967), nurses in an emergency room discovered marijuana in the sock of an unconscious patient. The court ruled the physician–patient privilege inapplicable reasoning:

> As of the moment when the package was discovered, no physician or surgeon has yet been in attendance or had seen the patient. Therefore, the relationship of physician–patient had not yet been effected. Since the physician–patient relationship had not been accomplished, the ban of the statute does not here apply.

*McCoy,* at 966.[3] Because a physician was not in attendance at the time Ms. Cahoon made her statements and the drugs were discovered, the privilege does not apply.

Even were the privilege applicable, the privilege only protects certain communications from disclosure in the course of litigation. 5A K. Tegland, Wash. Prac., *Evidence* § 162, at 7 (1989). The physician–patient privilege of a statement does not preclude its use in furnishing probable cause for the issuance of a search warrant. *State v. Bonaparte,* 34 Wn. App. 285, 289, 660 P.2d 334, *review denied,*

---

[3]Since *McCoy,* the Legislature has enacted a statute which now establishes a privilege for information given a registered nurse, if the information was necessary to enable the nurse to act in that capacity for the patient. Other statutes establish a privilege for optometrists and psychologists, as well as a limited privilege for social workers, therapists, and other counselors. *See* 5A K. Tegland, Wash. Prac., *Evidence* § 185, at 79–83 (1989). So far, no statute has been enacted which grants a privilege to an EMT or paramedic.

100 Wn.2d 1002 (1983). Thus, EMT Engle's report to Sergeant Jewett, which included statements made to him by Ms. Cahoon and a report of the evidence he found, could properly be used to establish probable cause for the resulting search warrant without violating the physician–patient privilege.

Finally, Ms. Cahoon contends the trial court erred in denying her motion to dismiss the marijuana charge. She claims the State had to prove the weight of the marijuana was over 40 grams, and the State's expert offered insufficient proof the scales were accurate.

John Kearns testified the marijuana was weighed on a "Metler Top Loading Balance", and the balance was checked for accuracy by the manufacturer on a yearly basis. He stated the balance was also checked on a regular basis by technicians using standard weights. The balance had been checked a week before and a week after the marijuana had been weighed and was found to be working properly on both occasions. Thus, the State offered sufficient proof of the accuracy of the balance at the time the marijuana was weighed. The court did not err in denying Ms. Cahoon's motion to dismiss the marijuana charge.

The judgment of the Superior Court is affirmed.

MUNSON, C.J., and GREEN, J., concur.

Review denied at 116 Wn.2d 1014 (1991).