[No. 13046.    Department Two.    March 11, 1916.]

O. P. WESSELER, *Respondent*, v. GREAT NORTHERN RAILWAY COMPANY, *Appellant*.[1]

COMMERCE—INTERSTATE COMMERCE — EMPLOYMENT — FEDERAL EMPLOYERS' LIABILITY ACT. An express messenger is employed in interstate commerce, within the Employers' liability act, where he was serving the electric light plant in the express car to illuminate an interstate train, and was paid by both companies and under obligation to stay with the train through several states; and it is unnecessary to show that interstate shipments or passengers were being carried at the time.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $7,000 for personal injuries resulting in traumatic neurasthenia to an express mesenger, 39 years of age, earning $1,380 a year, will not be set aside as excessive, where he had shrunk twenty pounds, lost appetite and suffered from sleeplessness, headaches and chills, and might not recover for a period of from eight months to three years, and had lost $2,000 in earnings before the trial.

WITNESSES—PRIVILEGE—PHYSICIANS. Under Rem. & Bal. Code, § 1214, subd. 4, excluding the testimony of a physician, without the patient's consent, as to any information acquired in attending the patient which was necessary to enable him to prescribe, a physician cannot be asked as to the condition in which he found a patient for whom he intended to prescribe, whether he was up or how he was acting; it not being necessary for the patient to justify by showing that the same was the basis of the prescription; and it being immaterial that he had previously testified to taking from the physician medicine that put him to sleep.

Appeal from a judgment of the superior court for King county, Ronald, J., entered March 24, 1915, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a railway employee. Affirmed.

*F. V. Brown* and *F. G. Dorety*, for appellant.

*Govnor Teats, Leo Teats*, and *Ralph Teats*, for respondent.

BAUSMAN, J.—Wesseler was an express messenger, who, serving defendant's interstate train between Washington and

[1]Reported in 155 Pac. 1063; 157 Pac. 461.

Montana, received pay from the express company with a supplement from the railway company for services at the train's electric plant in the express car. That he was hurt by the fault of the railway company is not denied. The sole questions are whether he has trial rights under the Federal liability act, whether the jury was properly instructed, and whether the jury gave him too much.

As to the first, there is no evidence that the train had, at the time of the injury, interstate freight or passengers, that the express company then had interstate shipments, or that the train was carrying interstate passengers whom Wesseler could be serving by turning on, as he said he was then doing, the electric current to illuminate the train. On the other hand, there is no testimony that there was not interstate freight, express shipments, or passengers. It is accordingly argued that Wesseler, though he might at the next station have come into interstate service, was not in it just then.

The proper presumption need not be chosen. While there is no precise precedent, it is present apparent authority that Wesseler was part of the equipment of the interstate vehicle. This express car with its electric equipment had to go forward in charge of some one to receive if not to discharge interstate shipments, as well as to maintain the electric plant, and Wesseler's obligation was to remain with it to Montana. He was as much in interstate commerce with it empty as full. *Horton v. Oregon-Washington R. & Nav. Co.*, 72 Wash. 503, 130 Pac. 897, 47 L. R. A. (N. S.) 8; *Pedersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146, Ann. Cas. 1914 C. 153; *North Carolina Co. v. Zachary*, 232 U. S. 248, Ann. Cas. 1914 C. 159. There is nothing contrary to this in *Boyle v. Pennsylvania Co.*, 228 Fed. 266, where the train was not an interstate but a distinctly within state train, and only made connections with an interstate train.

As to the instructions, it is not necessary for us to discuss them at length. We are satisfied the law was properly ex-

pounded to the jury, and that neither technical nor substantial advice was either given or refused to the prejudice of the defendant.

The real question is the amount of damages. Wesseler was thirty-nine years of age, and nothing of substantial prejudice in his previous life is adduced. That he was not shamming is frankly conceded in argument by defendant's counsel, who, however, contends that the verdict of $7,000 for his traumatic neurasthenia is excessive. The principal facts are that Wesseler had been seventeen months away from work before the trial, that he had shrunk approximately twenty pounds, that he had lost what was once a vigorous appetite, and that he was suffering from sleeplessness, headaches, and occasional chills. The opinion of doctors, summed up, was that he would indeed recover, but only in a period running from eight months to three years. He had been earning, at the time of his accident, $1,380 a year. As to his earnings between the injury and the trial and afterwards, something small had been and might be earned, but not sums large or from methodical application.

It is a delicate business to interfere with degree where the right of another body to settle an amount is conceded. Now something substantial must be allowed this man, to begin with, for the shock and fright of coming to consciousness in a ditch where he found himself groping and groveling in the sand. With the shock of the moment must be considered inevitable, and here established, nervousness immediately following it. If we add to that approximately $2,000 lost before the trial, we are unable to say that this verdict is too large. What we should have awarded him ourselves is unimportant. The jury's award must be sustained unless clearly erroneous. That we cannot adjudge it to be. Their estimates of his losses and their deductions for his earnings are equally undisclosed and in their province.

Judgment affirmed.

MORRIS, C. J., MAIN, PARKER, and HOLCOMB, JJ., concur.

### On Petition for Rehearing.

[Decided May 9, 1916.]

Per Curiam.—Appellant invokes a ruling on the lower court's excluding questions to its witness, plaintiff's physician, after what we deem objections by plaintiff both seasonable and proper.

Our statute says that a physician shall not testify without the patient's consent, or be examined "as to any information *acquired* in attending such patient, which was necessary to enable him to prescribe or act for the patient." Rem. & Bal. Code, § 1214, subd. 4.

This physician, on his visit, expected to prescribe, but defendant asked him whether plaintiff was up and dressed, whether he was moving about, whether he was staggering, walking in a hesitating manner, reeling, or showing any signs of nausea or dizziness. Defendant would justify these because, *first*, he was not asked to quote the patient; *second*, that while these symptoms might be observed for prescribing, it would be for the plaintiff to show that they were the basis of that; and *third*, that plaintiff had previously related that he took from this doctor a draught of medicine which put him asleep.

As to the first, it is not simply information gained from the patient's mouth that the statute excludes, but information "acquired in attending," not merely told or overheard. As to the second, the burden of justification plainly should be on the defense. As to the third, all that plaintiff had said was that he had taken the draught from him and had fallen asleep after a headache. This was no attempt to describe the doctor's treatment or theory of the disease or to quote a doctor while shutting his mouth. We passed these arguments because we deemed them quite without merit.

The petition is denied.