[No. 22531.   Department One.   October 2, 1930.]

CLARE TOOLE, *as Administratrix, et al., Appellants,* v.
FRANKLIN INVESTMENT COMPANY, *Respondent.*[1]

[1]Reported in 291 Pac. 1101.

*Turner, Nuzum & Nuzum* and *O. C. Moore,* for appellants.

*E. Eugene Davis, Raymond F. Kelly* and *Danson, Lowe & Danson,* for respondent.

TOLMAN, J.—In October, 1927, the plaintiff, Clare Toole and her husband, since deceased, became the occupants of an apartment in the Franklin Hall apartment house, in the city of Spokane, under a written lease for the term of one year, which demised a certain described apartment:

". . . to be occupied as a private dwelling exclusively and not otherwise; including heat when necessary, electric refrigerator, lights for public halls when necessary, and janitor service for the public halls, walks and stairs, and the removal of garbage."

The lease contained all of the usual provisions relating to real property to be used for residential purposes, but makes no mention of any folding bed or any other furniture or appliance except as stated in the quotation given above. The apartment did, however, contain a steel folding bed, presumably of standard construction, which was demonstrated to the plaintiff when she became a tenant of the apartment, and which she and her husband used without experiencing any difficulty for some three months.

In January, 1928, according to the allegations of the complaint and the testimony given in support thereof, the folding bed collapsed or fell upon the plaintiff, while she was occupying it, without any (to her) apparent cause or reason, inflicting the injuries for which she sues. The cause was tried to a jury which returned a verdict in favor of defendants. A motion for a new trial was denied and judgment entered on the verdict, from which the plaintiff has appealed.

The errors assigned raise but two questions,

both relating to the admission of evidence. It appears that, a year or more before the happenings of which complaint is here made, appellant had received injuries through coming in contact with a moving automobile, causing her to be taken to a hospital and being put under the care of physicians. Respondent offered, and was permitted, over objection, to introduce in evidence the hospital records of her case, covering a period beginning November 24, 1926, in the main, made by, or under the direction of, her then attending physicians. These records were objected to upon the twofold ground that they were hearsay and privileged.

The rule seems to be well established that such records are hearsay testimony, and also that, so far as they tend to disclose what the physicians thus learned, they are protected by the rule of privileged communications, as much so as if the physicians were being examined as witnesses in person. *Metropolitan Life Ins. Co. v. McSwain,* 149 Miss. 455, 115 South. 555; *Massachusetts Mutual Life Ins. Co. v. Board of Trustees,* 178 Mich. 193, 144 N. W. 538, Ann. Cas. 1915D 146, 51 L. R. A. (N. S.) 22; *Price v. Standard Life & Accident Ins. Co.,* 90 Minn. 264, 95 N. W. 1118; *Jordan v. Apter,* 93 Conn. 302, 105 Atl. 620; *Delaney v. Framingham Gas, Fuel & Power Co.,* 202 Mass. 359, 88 N. E. 773; *State to Use of Hall v. Trimble,* 104 Md. 317, 64 Atl. 1026; *Wright v. Upson,* 303 Ill. 120, 135 N. E. 209; *Baird v. Reilly,* 92 Fed. 884; and many other cases which might be cited. We must, therefore, hold that these records were inadmissible.

The second assignment is based upon the admission in evidence of a bed, without conclusive evidence that it was the identical bed which collapsed and caused the injuries; but we find that there was sufficient evidence from which the jury might have believed that it was the identical bed, or, if not, that mechanically it

was an exact duplicate or counterpart, which would make it admissible for demonstration purposes. Therefore, it was properly admitted.

■ But respondent contends that the error, if such it be, in admitting the hospital records, was not prejudicial, because appellant was not entitled to recover in any event, for three separate and distinct reasons: (1) That the relation of landlord and tenant existed between the parties, and that the landlord was under no duty to inspect or repair the premises or equipment; (2) that the appellant relies upon the doctrine of *res ipsa loquitur,* which is not here applicable; and (3) that there was no evidence of any negligence on the part of the respondent.

No doubt, as contended, a single room, a series of rooms, or an entire floor may be so let as in law to establish a separate tenement and create the relation of landlord and tenant, depending upon the contract, interpreted in the light of surrounding circumstances and the intention of the parties. See 35 C. J. 955, § 11. If we had to do here only with what usually pertains to a dwelling or that which is described in the lease, we might be compelled to follow the strict rule as to the landlord's liability, but where, as here, the lessor exhibits and offers the use of a mechanical convenience as an inducement to the prospective tenant, it occurs to us that he is bound in the first instance to furnish such an appliance free from inherent and latent defect, and if there be inherent danger in using it, he should be held in duty bound to fully warn and advise his tenant of those dangers.

The question is somewhat analogous to the simple tool doctrine. In the ordinary case, the tenant is as well qualified as is the landlord to ascertain the condition of the premises, and so is held to accept them at

his own risk. But here is a mechanical device regarding which the tenant knew nothing and could learn nothing by ordinary inspection. It was demonstrated to her in a manner to assure her that she could use it with perfect safety. It was not in terms leased to her, and she was not warned that prudence demanded regular and careful inspection or any special precaution and care in its use. Janitor service was furnished, and, while, by the terms of the lease, that did not include inspection and repairs to the bed, yet there is enough in the evidence to warrant a jury in finding that it was the duty of the janitor to keep the beds in good working order. To apply the strict rule as to the landlord's liability under such a set of facts, would be to warrant the maintenance of a double trap designed to first secure tenants and then to injure them. This we decline to do.

The other two questions can, we think, be considered together. Appellant and two of her witnesses all testified that, when, immediately after the accident, the janitor came in answer to call, he obtained tools and busied himself about the bed, apparently making repairs thereto, and said, in effect, that it was a wonder it had not fallen before. While, of course, not conclusive, this was, we think, sufficient to take the case to the jury without relying upon the doctrine of res ipsa loquitur, and it is unnecessary to decide whether or not that doctrine is here applicable. If, in fact, the janitor then found the mechanism of the bed to be out of repair and then repaired it, it might be extremely difficult to obtain further evidence, even though the negligence had been of the most flagrant sort. It was for the jury to say after having heard the denials and explanations of the janitor, as well as all of the other evidence in the case, some of which indicated that the beds in that apartment house had the habit of so be-

having, whether the bed was inherently defective or so out of repair as to be unsafe for ordinary use.

Because of the error in the admission of evidence, the judgment is reversed with directions to grant a new trial.

MITCHELL, C. J., PARKER, MILLARD, and BEALS, JJ., concur.