[No. 33909.   Department Two.   June 13, 1957.]

G. RANDA, *Respondent*, v. ANN BEAR, *Respondent*, GRAYS HARBOR COUNTY MEDICAL SERVICE BUREAU, *Appellant.*[1]

[1]Reported in 312 P. (2d) 640.

416

*Lester T. Parker*, for appellant.

*Donn F. Lawwill* and *Clark W. Adams*, for respondents.

DONWORTH, J.—The principal question in this case is the proper interpretation of RCW 5.60.060 (4) as applied to an insured under a medical service contract. The applicable portion of the statute reads:

"The following persons shall not be examined as witnesses:

"(4) A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient."

This action was instituted by the assignee of the corporation which owns and operates St. Joseph's hospital in Aberdeen to recover for hospital services rendered Mrs. Ann Lee Bear between November 19, 1953, and September 21, 1954, in the amount of $1,564.80 (less ten dollars paid on account).

Mrs. Bear (herein referred to as respondent), upon her

application, was granted permission to join the Grays Harbor Medical Service Bureau (herein called appellant) as cross-defendant.

In her answer, respondent admitted all the allegations of the complaint except that she alleged that the correct amount owing by her was $1,542.80. For her cause of action against appellant, respondent alleged the issuance by appellant of a medical and hospital service contract wherein it agreed to furnish her, at its own expense, with medical, surgical, and hospital care. She further alleged that appellant had refused to pay for the professional services of her physician, performed while she was confined in St. Joseph hospital, on two grounds: (1) That her physical condition for which the services were rendered pre-existed the time the contract was entered into; and (2) that she had received treatment for the same physical condition for more than six months.

When the case went to trial, respondent requested that these allegations as to the grounds for appellant's refusal to pay her claim be stricken. Her request was granted.

Respondent prayed that, if any judgment should be recovered against her by the assignee of the hospital, she have judgment over against appellant.

Appellant's answer to cross-complaint (including a trial amendment) admitted the execution of the service contract and respondent's hospitalization, and affirmatively pleaded the two applicable provisions of the contract referred to above as relieving it from liability.

At the commencement of the trial, it was stipulated by all three parties in open court that the hospital services rendered respondent were necessary, that they were performed, and that the amounts charged therefor were reasonable. It appears to be conceded that the service contract which was executed by appellant and Grays Harbor public utility district No. 1 afforded coverage to respondent as one of its employees.

Thus the factual issues presented to the trial court were limited to whether respondent was barred from recovering

on the service contract either because her hospitalization was necessitated by a physicial condition for which she had already received more than six months' treatment, or because such condition antedated the execution of the contract.

From the judgment rendered against it in the sum of $1,522.30, appellant has appealed to this court and has set forth nine assignments of error, the first five of which are:

"1. The court erred in refusing to permit appellant to question respondent, Ann Bear, with reference to her prior hospital treatments and the treatment for which this action is brought.

"2. The court erred in refusing to permit respondent's doctor to testify with reference to her prior treatment, and with reference to the hospital treatment for which this action is brought.

"3. The court erred in refusing to permit the witness, John Niles, (appellant's manager) to testify with reference to appellant's records relating to prior treatment of appellant for which appellant had paid.

"4. The court erred in refusing to admit the hospital records showing medical treatment for the respondent, Ann Bear.

"5. The court erred in denying appellant's motion for judgment and in the alternative for a new trial."

While respondent was testifying as an adverse witness, she was asked by appellant's counsel whether, when she consulted her physician in June, 1953, he told her that she had high blood pressure. Her counsel objected on the ground that any conversation between respondent and her physician was privileged. The trial court sustained the objection, saying:

"THE COURT: (Interrupting) The Court will rule that it is a privileged communication."

After the matter was argued by counsel at length, the court adhered to its ruling, and appellant's counsel made the following offer of proof:

"MR. PARKER: I offer to question this witness as to whether or not she was not treated for hypertension on the 14th day of May, 1948, on the 6th day of July, 1948, on the 6th day of September, no, of August, 1948, on the 21st day of September, 1948, on the 26th day of October, 1948, on the

21st day of December, 1948, on the 28th day of February, 1949, on the 15th day of March, 1949, on the 20th day of September, 1949, on the 10th day of July, 1950, on the 16th day of August, 1950, on the 15th day of December, 1950, on the 28th day of January, 1952, on the 11th day of December, 1951, on the 31st day of January, 1952, on the 29th day of January, 1952, on the 11th day of, on the 11th, 21, 26th days of February, 1952, on the 11th day of March, 1952, on the 27th day of June, 1952, and that bills were presented to the MEDICAL SERVICE BUREAU for her condition on the 6th day of June, 1952 (1953), which — . . . MR. PARKER: 1953, which is included in this action, and was denied by the MEDICAL SERVICE BUREAU, at which time she signed a waiver, which is shown by Defendant's Identification 3, which has been offered in evidence and rejected."

Identification 3 is a bill for five dollars submitted to appellant for services rendered respondent by her physician during June, 1953. It is signed on its face both by respondent and her physician. It contains the following:

"Diagnosis—arterial hypertension
cardiac disease (valvular)."

On the reverse side is a printed form, signed by respondent, reading as follows:

"I hereby expressly authorize any physician or hospital to disclose to GRAYS HARBOR COUNTY MEDICAL SERVICE CORP. any information obtained by having attended me or hereafter attending or examining me, and I understand that GRAYS HARBOR COUNTY MEDICAL SERVICE CORP. will not disclose any information so obtained. Signed Mrs. Ann Bear."

Just before this offer of proof was made, respondent had identified her signature on each side of identification 3, but claimed that the diagnosis appearing on the face of the bill was placed there after she had signed below it. The court ruled that the proffered exhibit was inadmissible, and that appellant was barred by the physician-patient privilege from attempting to elicit from respondent testimony as to her previous treatment for hypertension (high blood pressure).

Appellant offered to prove, by the testimony of the doctor who had attended respondent during the illness which led

to this suit, that the illness (a stroke) was the direct result of hypertension; that the physician had treated her earlier for the same condition; and that before she suffered the stroke she had received more than six months' treatment at appellant's expense for the same condition. Appellant also offered to prove, by the testimony of another physician, that respondent had been treated for hypertension in 1952, before she became a party to the medical service contract. Both offers were rejected by the court on the ground that the proferred testimony was privileged under the statute quoted above.

Appellant also attempted to introduce records of the St. Joseph hospital, and to prove, by its own records, that respondent had been treated for the same illness for more than six months before she was hospitalized. This evidence was excluded by the court on the ground that it necessarily contained privileged information supplied by the attending physicians.

Because of the court's rulings, appellant was unable to introduce any evidence whatever to support its defense that respondent's illness fell within two exclusionary provisions of the medical service contract above referred to.

We must therefore decide two questions: (1) whether the evidence offered by appellant was of the type ordinarily privileged under the statute; and (2) if it were, whether it should nevertheless have been admitted on the ground that respondent had waived the privilege.

At common law, communications between a physician and his patient were not privileged. Therefore, the statute creating the privilege, being in derogation of the common law, should be construed strictly. On its face, the statute merely provides that a *physician* shall not be compelled to reveal, without the consent of his patient, information acquired in professionally attending the patient. However, courts have broadened the privilege by interpreting the statute as prohibiting the questioning of the *patient* about communications between him and the physician. 58 Am. Jur. 235, Witnesses, § 408, and cases cited. The privilege applies to all information acquired by the physician for

the purpose of enabling him to treat the patient, including that which he learns from observation as well as through communication with him. *Wesseler v. Great Northern R. Co.*, 90 Wash. 234, 155 Pac. 1063, 157 Pac. 461 (1916). The privilege also extends to X-ray photographs made at the physician's direction and to hospital records containing information supplied by him. *Hansen v. Sandvik*, 128 Wash. 60, 222 Pac. 205 (1924); *Toole v. Franklin Inv. Co.*, 158 Wash. 696, 291 Pac. 1101 (1930).

■ We conclude, from these holdings, that in the present case the testimony of the physicians who attended respondent, the testimony of respondent herself as to her prior treatments, and the records of the hospital were all privileged under the statute. We shall assume, for purposes of this case, without deciding, that the records of appellant showing the nature and extent of respondent's past treatments were also privileged.

■ The question remains as to whether the physician-patient privilege was waived by respondent. The privilege is that of the patient, and by the terms of the statute it may be waived by him. The introduction by the patient of medical testimony describing the treatment and diagnosis of an illness waives the privilege as to that illness, and the patient's own testimony to such matters may have the same effect. *McUne v. Fuqua*, 42 Wn. (2d) 65, 253 P. (2d) 632 (1953); *State v. Wilson*, 182 Wash. 319, 47 P. (2d) 21 (1935); 58 Am. Jur. 253, Witnesses, § 447. The privilege may also be waived in advance by contract. 58 Am. Jur. 25, Witnesses, § 444; 8 Wigmore on Evidence (3d ed.) 830, § 2388 (b).

■ In the present case, appellant succeeded in eliciting from respondent some testimony as to her past diagnosis and treatments. However, this testimony was elicited while respondent was testifying as an adverse witness. Under the general rule, it therefore did not constitute a "voluntary opening of the door" and was not a waiver of the privilege. *Packard v. Coberly*, 147 Wash. 345, 265 Pac. 1082 (1928). No waiver by contract was shown by the evidence. Appellant's identification 3, which was offered and rejected, contained a clause by which respondent authorized any physi-

cian to disclose privileged matter to appellant, but the court's exclusion of this exhibit has not been assigned as error. Thus, the privilege was waived by neither testimony nor contract; the waiver, if any, was implicit in the nature of the action brought by respondent in her cross-complaint.

The purpose of the various state legislatures in creating the privilege was to foster the physician-patient relationship by inspiring confidence in the patient and encouraging him to make a full disclosure to the physician of his symptoms and condition, free of the worry that an embarrassing condition might become public knowledge. Despite this laudable goal, the privilege has often been criticized as an unnecessary obstruction to the courts' function of ascertaining the truth. Dean Wigmore wrote of it as follows:

"(1) In only a few instances, out of the thousands daily occurring, is the fact communicated to a physician confidential in any real sense. Barring the facts of venereal disease and criminal abortion, there is hardly a fact in the categories of pathology in which the patient himself attempts to preserve any real secrecy. . . .

"(2) Even where the disclosure to the physician is actually confidential, it would none the less be made though no privilege existed. People would not be deterred from seeking medical help because of the possibility of disclosure in court. If they would, how did they fare in the generations before the privilege came? . . .

"(3) That the relation of physician and patient should be fostered, no one will deny.

"But (4) that the injury to that relation is greater than the injury to justice—the final canon to be satisfied—must emphatically be denied. The injury is decidedly in the contrary direction. Indeed, the facts of litigation today are such that the answer can hardly be seriously doubted." 8 Wigmore on Evidence (3d ed.) 810, § 2380a.

For these reasons, the learned author, in common with other commentators, maintains that the privilege should be deemed waived in such a case as the one before us. In his view,

" . . . the *bringing of an action* in which an essential part of the issue is the existence of physical ailment should be a *waiver* of the privilege for all communications concerning that ailment. The whole reason for the privilege is the

patient's supposed unwillingness that the ailment should be disclosed to the world at large; hence the bringing of a suit in which the very declaration, and much more the proof, discloses the ailment to the world at large, is of itself an indication that the supposed repugnancy to disclosure does not exist." 8 Wigmore on Evidence (3d ed.) 832, § 2389 (1).

The same author states that entering into a contract of accident or life insurance should in itself be deemed an implied waiver of the privilege by both parties. 8 Wigmore on Evidence (3d ed.) 831, § 2388(b). The medical service contract upon which respondent seeks recovery here is an insurance contract. *McCarty v. King County Medical Service Corp.*, 26 Wn. (2d) 660, 175 P. (2d) 653.

The majority rule, however, has been that the bringing of an action in which an essential issue is the existence of a physical ailment does not constitute a waiver. 58 Am. Jur. 252, Witnesses, § 445, and cases cited. In recent years, this rule has been modified in several states by statutes providing that *the bringing of an action for personal injuries* constitutes a waiver of the privilege as to those injuries. See Annotation, 25 A.L.R. (2d) 1429.

In the present case, it is obvious that the use of the physician-patient privilege deprived the court of all opportunity to ascertain the material facts necessary to its determination of the principal issue raised by the pleadings, to wit, whether or not respondent's claim in fact fell within the exclusionary provisions of the medical service contract. When respondent filed her cross-complaint against appellant, she knew that she had the burden of proving that the services in question were rendered by the hospital, that they were necessary, and that the amount charged for them was reasonable. Respondent further knew that, in order to prove these matters, she would have to testify regarding them herself and probably introduce corroborating testimony of her doctors. In so doing, she undoubtedly intended to waive the physician-patient privilege, and consequently appellant would have been able to introduce the evidence described in its various offers of proof. The court would thus have been able to render a decision after a full presentation

of the material facts by both parties instead of upon one-sided, self-serving testimony of respondent.

We do not think that appellant's stipulating to these matters, which was done for the purpose of saving the court's time and expediting the trial of the case for the benefit of all three parties, should be used as a ground for depriving it of any chance to present its defense. In bringing her cross-complaint based on the medical service contract, respondent placed herself in a position which would have required her, in the normal course of events, to reveal to the world the nature of her illness and the treatment she received for it. She thus expressed a willingness to abandon the right of medical privacy which the statutory privilege created. Under these circumstances, she should not have been allowed to take an unfair advantage of appellant's stipulation (made for the purpose of shortening the trial) by interposing the claim of privilege to completely bar appellant from presenting its defense.

Three recent New York cases have been decided on similar grounds. In *Eder v. Cashin*, 281 App. Div. 456, 120 N. Y. S. (2d) 165 (1953), the court held that the privilege is waived by a party who "tenders the issue" of his physical condition. In *Van Heuverzwyn v. State*, 206 Misc. 896, 134 N. Y. S. (2d) 922 (N. Y. Ct. Cl., 1954), it was held that the filing of a claim against the state for injuries suffered while the claimant was confined in an institution, where proof of the subject matter would have necessitated the use of ordinarily privileged evidence, constituted a waiver of the privilege. In *Scolavino v. State*, 187 Misc. 253, 62 N. Y. S. (2d) 17 (N. Y. Ct. Cl., 1946), the court said:

"A waiver may be implied where the conduct of the party asserting the privilege had placed the adverse party in such a position with respect to the evidence that it would be unfair and inconsistent to permit retention of the privilege."

That language is appropriate to the case before us. We hold that respondent, by bringing a suit upon the medical service contract to which she was a party, and thus placing in issue her physical condition and the ailment for which

she was treated, waived the privilege afforded her by the statute.

Respondent relies principally on *Noelle v. Hoquiam Lbr. & Shingle Co.*, 47 Wash. 519, 92 Pac. 372, as supporting the ruling of the trial court in this case. The *Noelle* case was an action by an employee against an employer to recover for personal injuries received while in the course of his employment. The plaintiff testified as to the character of his injuries but not as to what his attending physician said or did in connection with treating him professionally. Two other physicians assisted the attending physician in caring for the plaintiff's wounds. The latter having died prior to the trial, the defendant called the other two physicians as witnesses to testify as to the extent of the plaintiff's injuries. The court sustained the plaintiff's objection to their so testifying because of the same statute (RCW 5.60.060(4)) that is involved in the present case. On appeal, the majority upheld the trial court. Two judges dissented in a vigorous opinion.

The *Noelle* case was decided in 1907, before the employee's cause of action for such injuries was abolished by the workmen's compensation act of 1911. In 1915, the legislature enacted Laws of 1915, chapter 63, p. 236 (Rem. Rev. Stat., § 1230-1), which authorized the court to direct that the plaintiff in a personal injury case submit to a physical examination by one or more competent physicians or surgeons in order to qualify him or them to testify "as to the nature, extent and probable duration of the injury complained of." Effective January 2, 1951, this court adopted Rule of Pleading, Practice and Procedure 35, 34A Wn. (2d) 98. The statute was abrogated in 1954 by Rule of Pleading, Practice and Procedure 44.

Rule 35, *supra*, which was in effect when the instant case was tried, substantially enlarged the scope of the authority of the trial court to order a physical examination. The rule reads as follows:

"(a) Order for Examination.

"In an action in which the mental or physical condition of a party is in controversy, the court in which the action is

pending may order him to submit to a physical or mental examination by a physician. The order may be made only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

"(b) Report of Findings.

"(1). If requested by the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting out his findings and conclusions. After such request and delivery the party causing the examination to be made shall be entitled upon request to receive from the party examined a like report of any examination, previously or thereafter made, of the same mental or physical condition. If the party examined refuses to deliver such report the court on motion and notice may make an order requiring delivery on such terms as are just, and if a physician fails or refuses to make such a report the court may exclude his testimony if offered at the trial.

"(2) By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party examined waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition."

Thus this court, by adopting Rule of Pleading, Practice and Procedure 35, intended to correct the injustice which was permitted to exist in the *Noelle* case so that now a trial court can no longer be compelled by a claim of privilege to decide any case involving the mental or physical condition of any party to the action *after hearing only a part* of the evidence material to that issue. The means is now available to the court to have access to all material facts relating to the mental or physical condition of any party in any case where such condition is in controversy. The rule of the *Noelle* case has, in effect, been abrogated by the adoption of Rule of Pleading, Practice and Procedure 35.

We think that, by filing her cross-complaint against appellant upon the medical service contract, respondent waived her privilege, and the trial court erred in denying

appellant an opportunity to present medical evidence in its attempt to show that respondent's ailment fell within the exclusionary provisions of that contract, as pleaded in its affirmative defense.

The judgment is reversed, and the cause is remanded for a new trial.

HILL, C. J., SCHWELLENBACH, ROSELLINI, and FOSTER, JJ., concur.