[No. 2451-1.    Division One.    December 23, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES JAMES BROUSSARD, *Appellant*.

356

*Carl T. Hultman* and *Robert T. Czeisler* of *Seattle-King County Public Defender,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Philip Y. Killien* and *Roger A. Myklebust, Deputies,* for respondent.

HOROWITZ, J.—Defendant appeals from a conviction for first-degree burglary and first-degree murder.

On January 2, 1973, Patricia Veguilla was shot and killed in her apartment. Her own .22-caliber pistol was found near her body with three rounds discharged, two of which were found in the walls of the apartment. Within an hour of the report of Mrs. Veguilla's death, Seattle police officers responded to an aid call at 824 29th Avenue, where they encountered defendant suffering from a stomach wound. Defendant stated to the officers that he had been shot by the driver of another car at 16th and Fir. Within a block of defendant's residence a stolen vehicle was found with blood in the front seat. While defendant was being transported to Harborview Hospital, it was determined he was a suspect in the Veguilla killing. He was, accordingly, placed under police guard. Officer Fred Carr entered the operating room with defendant and the surgical team.

Defendant was operated on at Harborview Hospital by Dr. George Foster. Officer Carr remained in the operating

room to guard defendant and to recover any bullet that might be found. Dr. Foster removed the bullet from defendant's body and gave it to Officer Carr. The bullet so recovered was subsequently determined to be .22 caliber and to have come from Mrs. Veguilla's pistol.

On March 1, 1973, defendant was charged with first-degree burglary and first-degree murder. On May 8, 1973, defendant filed a written motion to suppress all evidence concerning the bullet on the ground any such evidence would come under the physician-patient privilege. RCW 5.60.060(4). The motion was denied. Defendant repeated the same motion at trial; it was again denied. Defendant was convicted of the charges. He appeals.

Defendant contends the court erred in denying defendant's motion to suppress Dr. Foster's testimony and any information obtained from him arising out of his treatment of defendant. He particularly contends the court erred in denying defendant's motion to suppress all testimony relating to information and examination of the .22-caliber bullet. He argues defendant was the doctor's patient, so that the evidence sought to be suppressed is privileged against disclosure by RCW 5.60.060(4).

The State contends the physician-patient privilege described in RCW 5.60.060(4) is available in a civil, but not in a criminal, action. The statute states "A regular physician or surgeon shall not, without the consent of his patient, be examined in a *civil action* . . ." (Italics ours.) It argues no express statute provides a physician-patient privilege in criminal actions and Washington decisions recognizing the privilege should be overruled. It suggests that the court adopt the rationale of *State v. Betts*, 235 Ore. 127, 384 P.2d 198, 7 A.L.R.3d 1445 (1963), and refuse to recognize the physician-patient privilege in criminal cases. The trial court held the physician-patient privilege in this state applied to criminal cases. It held, however, that testimony identifying the bullet and its removal from defendant did not come within the privilege described in RCW

5.60.060 (4), which requires that the privileged testimony be of matters "necessary to enable him [the physician] to prescribe or act for the patient."

Regardless of the rule announced in *State v. Betts, supra,* since *State v. Miller,* 105 Wash. 475, 178 P. 459 (1919), RCW 10.58.010 has been construed to permit recognition of the physician-patient privilege in criminal cases. This rule has been adhered to since. *State v. Boehme,* 71 Wn.2d 621, 430 P.2d 527 (1967); *State v. McCoy,* 70 Wn.2d 964, 425 P.2d 874 (1967); *State v. Sullivan,* 60 Wn.2d 214, 373 P.2d 474 (1962); *State v. Tradewell,* 9 Wn. App. 821, 515 P.2d 172 (1973); *State v. Gibson,* 3 Wn. App. 596, 476 P.2d 727 (1970). There are other jurisdictions which recognize the physician-patient privilege in criminal cases, although the statutes are not necessarily the same as Washington's. *See* Annot., 7 A.L.R.3d 1458, § 2 (1966); 8 J. Wigmore, *Evidence* § 2385 (J. McNaughton rev. ed. 1961).

■ The physician-patient privilege has been in effect in this state for so many years that we should not change the rule without grave necessity. In declining an invitation to overrule an earlier decision, *Winterroth v. Meats, Inc.,* 10 Wn. App. 7, 13, 516 P.2d 522 (1973), had this to say:

> The difficulty we face is that the rule asked to be over-thrown has been in effect for over 50 years. *Biggs [Biggs v. Donovan-Corkery Logging Co.,* 185 Wash. 284, 54 P.2d 235 (1936)], in reaching its conclusion and in referring to two other Washington cases, stated:
>> Those cases were both decided in 1922, should now be considered as precedents and not departed from without grave necessity
> *Biggs v. Donovan-Corkery Logging Co., supra* at 288. It must be presumed that the legislature has been aware of the rule announced in 1922 and then reaffirmed in later decisions. It would have been a simple matter for the legislature to have changed the rule and adopted a broader exception so as to permit the action here if the legislature wished such change to be effected.

■ It remains to consider whether the physician-patient privilege is applicable under the facts here. The sub-

ject matter protected by the physician-patient privilege, whether it be a communication or information the physician obtains by observation or personal examination, is limited to subject matter confidential in nature, the disclosure of which would be a breach of professional confidence. *See Breimon v. General Motors Corp.*, 8 Wn. App. 747, 509 P.2d 398 (1973); *State v. Gibson, supra; Hansen v. Sandvik*, 128 Wash. 60, 222 P. 205 (1924); C. DeWitt, *Privileged Communications Between Physician and Patient* §§ 19, 47, 53 (1958); 8 J. Wigmore, *Evidence* §§ 2381, 2384 (J. McNaughton rev. ed. 1961); 97 C.J.S. *Witnesses* § 296 (1957).

Here no *confidential* information was disclosed by Dr. Foster. There was nothing secret or confidential about the bullet in defendant's body. Defendant stated to the police officers, who arrived in response to a call for a first aid car, that he had been shot. A bullet was visible just under the skin where he had been shot, and the police officers noticed it. The defendant desired the bullet to be removed and made his wish known to the police officers. They called for a first aid car to take him to the hospital to have the bullet removed. When the bullet was removed, Dr. Foster delivered the bullet to Police Officer Carr. At no time did Dr. Foster know from whose gun the bullet came. Had defendant told Dr. Foster in confidence, outside the hearing of Police Officer Carr, that the bullet came from the victim's gun, a different question would be presented.

■ The absence of the required confidentiality described precluded defendant's right to object to the testimony as a violation of the physician-patient privilege. The motion to suppress was properly denied. *State v. Scott*, 491 S.W.2d 514 (Mo. 1973); *cf. Green v. State*, 257 Ind. 244, 274 N.E.2d 267 (1971). Although the trial court's denial of the motion to suppress was not expressly based on the ground of nonconfidentiality, we may nevertheless rely on that

ground in affirming the trial court's ruling. *See State v. Carroll*, 81 Wn.2d 95, 500 P.2d 115 (1972).

Affirmed.

FARRIS and JAMES, JJ., concur.

Petition for rehearing denied February 18, 1975.