[Nos. 6929-1; 6937-1; 6954-1.] Division One. [May 21, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. ALBERT M. MARK, ET AL, *Appellants*.

*Kinzel, Acheson & Marshall, William L. Kinzel, Snyder & Middleton,* and *Thomas T. Middleton, Jr.,* for appellants.

394

*Norm Maleng, Prosecuting Attorney,* and *Kenneth Sharaga, Deputy,* for respondent.

JAMES, J.—Albert Mark, a licensed pharmacist and the owner of two West Seattle pharmacies, was convicted in June 1977 of one count of grand larceny and five counts of forgery in connection with obtaining reimbursement for fraudulent Medicaid prescriptions. Mark received a 5–year deferred sentence on the condition that he spend 1 year in jail and make restitution in an amount to be determined later. Prior to trial, Mark sold one of his pharmacies to his daughter and son–in–law, Arlene and Michael Ng, who are registered pharmacists and who have continued to operate the business.

In September 1978, over the objections of both Mark and the Ngs, the trial judge granted an order allowing the State to inspect and audit prescription forms in the two pharmacies for purposes of determining restitution. The separate appeals of Mark and the Ngs from that order have. been consolidated. We affirm.

Mark and the Ngs first argue that the audit would violate confidentiality requirements of the Washington Board of Pharmacy. They rely on the language of WAC 360–16–260(2):

> The information in the patient medication record shall be deemed confidential and may be released to other than patient or prescriber only on written release of the patient.

We do not agree.

By statute, prescriptions are subject to inspection for law enforcement purposes.

> Every proprietor or manager of a pharmacy or drug store shall keep in his place of business a suitable book or file, in which shall be preserved for a period of not less

than five years the original of every prescription compounded or dispensed at such pharmacy or drug store, numbering, dating and filing them in the order in which they were compounded or dispensed, and *shall produce the same in court or before any grand jury whenever lawfully required to do so.* Such book or file of original prescriptions shall at all times be open for inspection by the prescriber, the board of pharmacy, or any officer of the law.

(Italics ours.) RCW 18.64.245.

WAC 360-16-260(2) does not purport to constrict the scope of the statute by equating confidentiality with immunity from judicial inquiry or process. "Any grant of testimonial privilege is necessarily in direct conflict with the essential judicial power to compel the production of evidence. Such power is inherent in the judiciary." (Citation omitted.) *Cook v. King County,* 9 Wn. App. 50, 52, 510 P.2d 659 (1973). Our Supreme Court has consistently held that confidentiality requirements do not restrict a superior court judge's inherent power to compel the production of evidence and the appearance of witnesses. *State v. Thompson,* 54 Wn.2d 100, 338 P.2d 319 (1959); *State ex rel. State v. Church,* 35 Wn.2d 170, 211 P.2d 701 (1949); *State ex rel. Haugland v. Smythe,* 25 Wn.2d 161, 169 P.2d 706, 165 A.L.R. 1295 (1946).

Mark next asserts that the audit would violate the physician–patient privilege granted by RCW 5.60.060(4). Mark's contention is that a pharmacist, as an agent for the physician, can assert the privilege. Washington's "privileged communications" statute, RCW 5.60.060(4), proscribes the examination of a physician "in a civil action as to any information acquired in attending [a] patient, . . ." As pointed out in *State v. Broussard,* 12 Wn. App. 355, 358, 529 P.2d 1128 (1974), the statute has been judicially "construed to permit recognition of the physician–patient privilege in criminal cases."

The proposed audit will cover two types of prescription records. As to fraudulent prescriptions, the assertion of privilege is obviously spurious as there is no patient whose

right to privacy would be invaded. As to legitimate pre-scriptions, we hold the privilege does not bar the audit.

■■ As we have noted, RCW 18.64.245 mandates the production of prescription records when required by court order. It is an established standard of statutory construction that a later–enacted specific statute effectively supersedes an earlier general statute relating to the same subject matter. *State v. Walls*, 81 Wn.2d 618, 503 P.2d 1068 (1972). The physician–patient privilege was first enacted in 1881. RCW 18.64.245 was enacted in 1939. The legislature has, therefore, determined that the physician–patient privilege does not apply to prescription records.

■ Furthermore, as pointed out in *State v. Broussard, supra* at 358–59,

> [t]he subject matter protected by the physician–patient privilege, whether it be a communication or information the physician obtains by observation or personal examination, is limited to subject matter confidential in nature, the disclosure of which would be a breach of professional confidence.

(Citations omitted.) The contemplated audit will only result in examination of the prescriptions. No public disclosures in open court will result. Representatives of the Department of Social and Health Services will conduct the audit; they are legally bound to maintain confidentiality. RCW 74.04.060; WAC 388–48–010; WAC 388–81–035. Furthermore, the trial judge can use his inherent power, if necessary, to prevent either inadvertent or intentional disclosure.

■ Assuming for the purposes of discussion that the privilege is available to pharmacists, the public interest served by the audit and the underlying prosecution of those involved in Medicaid fraud overrides the very limited interest a patient might have in not allowing the auditors to review his prescriptions.

The physician–patient privilege is applicable only "so far as practicable" in criminal cases. RCW 10.58.010. *State v. Sullivan*, 60 Wn.2d 214, 373 P.2d 474 (1962). It was

designed to safeguard the free exchange of information in connection with obtaining medical treatment and should be limited to that purpose. *State v. Boehme,* 71 Wn.2d 621, 430 P.2d 527 (1967), *cert. denied,* 390 U.S. 1013, 20 L. Ed. 2d 164, 88 S. Ct. 1259 (1968).

■ Mark and the Ngs contend that the unauthorized disclosure of prescription records would constitute an actionable violation of privacy and subject them to civil liability. Their contention is without merit. A physician is not liable for divulging privileged communications after his objection raising the physician–patient privilege is overruled and he is ordered to testify. *Smith v. Driscoll,* 94 Wash. 441, 162 P. 572 (1917). The same rule would undoubtedly protect a pharmacist.

■ Mark asserts that the restitution order is invalid because it exceeds restitution for the "crime in question." RCW 9.95.210. In connection with the grand larceny count, he was charged by amended information with being "engaged in a scheme and plan to defraud" the Department in which manner he "collected substantial sums of money from the Department, the total amount unknown, . . ." The audit was only for purposes of determining restitution for the "crime in question," grand larceny. Our recent holding in *State v. Eilts,* 23 Wn. App. 39, 596 P.2d 1050 (1979) is clearly distinguishable.

Affirmed.

FARRIS and DORE, JJ., concur.

Reconsideration denied July 2, 1979.