[No. 4975-9-II.   Division Two.   May 6, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES ALLEN NIEMCZYK, ET AL, *Appellants.*

*James Sowder,* for appellants.

*Art Curtis, Prosecuting Attorney,* and *James M. Peters, Deputy,* for respondent.

REED, C.J.—Defendants Terry Price and James Niemczyk appeal jury convictions of first degree escape. They assign error to the trial court's failure to appoint a polygraph expert at public expense and its refusal to instruct the jury on the defense of necessity. We find these assignments of error to be without merit and affirm the convictions.

Defendants were inmates at the Larch Mountain Corrections Center, a minimum security facility for adult male felons. By their account, on the night of April 14, 1980, defendant Price was accosted in the shower room by five members of a group of inmates known as the "family," who threatened him with physical abuse unless he submitted to their homosexual advances. Upon Price's refusal, a fight commenced which was subsequently broken up by defendant Niemczyk. After the confrontation, defendants returned to their rooms without reporting the incident to any of the guards.

Several hours later defendants encountered some of the same members of the "family" in the television lounge. Although no direct physical confrontation occurred, the group of inmates whispered among themselves and made certain gestures which defendants allegedly perceived as threatening. A short time later, defendants walked out of the corrections center and escaped into the surrounding forest.

The following morning, after spending a night lost in the woods, defendants found their bearings and started walking in the general direction of Vancouver. They were subsequently located by Sergeant Coleman, a guard at Larch Mountain, about 8 miles from the corrections center. Upon recognizing Sergeant Coleman, defendants fled into the woods. They were captured at gunpoint 6 hours later.

At trial defendants did not contest the fact that they escaped from Larch Mountain. However, they asserted the defense of duress, contending that their actions were motivated by threats of imminent sexual assault and physical injury from the "family." They testified that they did not report these threats to the authorities at the corrections center because they believed some of the guards were in cahoots with the "family," and because they feared the physical consequences of being labeled a "snitch." Defendants further testified that they failed to turn themselves in to Sergeant Coleman the morning following their escape because he had a reputation for shooting escapees on sight.

Prior to trial defendants, who were indigent, moved for the appointment of a polygraph expert at public expense. The State refused to stipulate to the admission of polygraph evidence and the motion was denied by the trial court. The court subsequently refused to give a duress instruction to the jury on the grounds that defendants had failed to introduce substantial evidence in support of the defense. Both defendants were ultimately found guilty of first degree escape and sentenced to 10 years in prison.

On appeal defendants first assign error to the trial court's failure to grant their motion for the appointment of a polygraph expert at public expense. Defendants maintain that because fellow inmates would not testify due to fear of physical retaliation at the hands of the "family," a polygraph examination was the only way to substantiate their allegations relating to the defense of duress. They argue that under these circumstances the trial court's failure to provide for a polygraph expert deprived them of their Sixth Amendment rights to effective assistance of counsel and compulsory production of witnesses.

■ We find this argument unpersuasive. The State is required to pay for expert witnesses for an indigent defendant only where such services are necessary to an adequate defense. CrR 3.1(f).[1] Consequently, a defendant's

---

[1]The Washington courts have held that an indigent criminal defendant has no

request for an expert witness may properly be denied where such assistance would not materially add to his defense. *State v. Dickamore,* 22 Wn. App. 851, 592 P.2d 681 (1979). Here, the absence of stipulation by the State, together with defendants' failure to lay any foundation on the general reliability of polygraph evidence, would have rendered the results of the requested polygraph examination inadmissible. *State v. Young,* 87 Wn.2d 129, 550 P.2d 1 (1976); *State v. Woo,* 84 Wn.2d 472, 527 P.2d 271 (1974). Therefore, the proposed examination would not have aided defendants at trial and the denial of their motion was appropriate.

Defendants next contend that even without the testimony of a polygraph expert, the evidence presented at trial established an arguable theory that their escape was induced by threats of sexual assault and physical abuse from members of the "family." Therefore, they argue that the trial court's failure to give their proposed jury instruction on the defense of "duress" constituted reversible error. We disagree.

Although both parties discuss this assignment in terms of "duress," and both refer to RCW 9A.16.060,[2] we note that the defense asserted is more properly denominated one of

---

Sixth Amendment right to the assistance of expert witnesses greater than is permitted under this rule. *State v. Dickamore,* 22 Wn. App. 851, 592 P.2d 681 (1979).

[2]RCW 9A.16.060 provides:

"Duress. (1) In any prosecution for a crime, it is a defense that:

"(a) The actor participated in the crime under compulsion by another who by threat or use of force created an apprehension in the mind of the actor that *in case of refusal* he or another would be liable to immediate death or immediate grievous bodily injury; and

"(b) That such apprehension was reasonable upon the part of the actor; and

"(c) That the actor would not have participated in the crime except for the duress involved.

"(2) The defense of duress is not available if the crime charged is murder or manslaughter.

"(3) The defense of duress is not available if the actor intentionally or recklessly places himself in a situation in which it is probable that he will be subject to duress.

"(4) The defense of duress is not established solely by a showing that a married person acted on the command of his or her spouse." (Italics ours.)

"necessity." Clearly, the statute does not govern on the facts of the case. By its terms RCW 9A.16.060 relates only to that kind of direct force or threat employed in order to bring about or compel the crime committed and sought to be excused. Here defendants make no claim they were "coerced" into escaping confinement. *See generally* W. LaFave & A. Scott, *Criminal Law* 374–83 (1972).

The State does not suggest there is no defense of necessity apart from the true duress addressed in the statute. Nor do we divine any legislative intent to dispense with such a defense, which is well recognized in the common law and often employed in prison escape cases. *See State v. Diana*, 24 Wn. App. 908, 604 P.2d 1312 (1979).

■ In any event, necessity is an affirmative defense and should not be considered by the jury unless the defendant has submitted substantial evidence to support it. RCW 9A.16.060; *State v. McKinney*, 19 Wn. App. 23, 573 P.2d 820 (1978). To be entitled to an instruction on necessity in the specific context of an escape charge, an escapee must offer evidence justifying his continued absence from custody as well as his initial departure. *United States v. Bailey*, 444 U.S. 394, 62 L. Ed. 2d 575, 100 S. Ct. 624 (1980); *United States v. Michelson*, 559 F.2d 567 (9th Cir. 1977); *People v. Lovercamp*, 43 Cal. App. 3d 823, 118 Cal. Rptr. 110 (1974).[3] An indispensible element of such an offer is evidence of a bona fide effort to surrender or return

---

[3]In *Lovercamp*, the court enumerated a total of five conditions that had to be established before an escapee was entitled to a jury instruction on necessity. Specifically, the court required a showing that (1) the prisoner was faced with the threat of death, forcible sexual attack, or substantial bodily injury in the immediate future; (2) there was no time for a complaint to the authorities or there existed a history of futile complaints; (3) there was no time or opportunity to resort to the courts; (4) there was no evidence of force or violence used toward prison personnel or other "innocent" persons in the escape; and (5) the prisoner immediately reported to the proper authorities upon reaching a position of safety. *Lovercamp*, 43 Cal. App. 3d at 827. Both parties invite this court to adopt in toto the *Lovercamp* criteria. We decline the invitation. Because we find defendants failed to prove a bona fide effort to return to custody, we are not called upon to decide the relevancy of the other factors enumerated in *Lovercamp*. Accordingly, we leave that determination to future cases.

to custody as soon as the claimed duress has lost its coercive force. *Bailey,* 444 U.S. at 413.

In the instant case defendants' own testimony disclosed that they failed to make any effort to return to custody after they had avoided what they claimed was the immediate threat of sexual attack from their fellow inmates. Indeed, their testimony revealed that they consciously avoided opportunities to do so when they passed several residences with telephone service during daylight hours and when they fled into the woods upon seeing Sergeant Coleman the morning following their escape. Defendants' justification for this conduct consisted entirely of unsubstantiated allegations concerning the corruptness of the guards at Larch Mountain and Sergeant Coleman's propensity to use his firearm when hunting escapees. The only positive evidence presented by defendants in this regard was their testimony that they were going to surrender upon reaching Vancouver. These types of vague allegations and self–serving statements as to future good intentions have been held insufficient to support a finding that an escapee made a bona fide effort to surrender upon reaching a position of safety. *Bailey,* 444 U.S. at 415. Accordingly, we hold that defendants failed to present substantial evidence on an essential element of the necessity defense and that their proposed jury instruction was properly rejected by the trial court.

For the stated reasons, we affirm.

PETRIE and WORSWICK, JJ., concur.