[No. 29673-6-I. Division One. July 6, 1993.]

THE CITY OF MOUNT VERNON, *Respondent,* v. TIMOTHY
A. COCHRAN, *Petitioner.*

*Helen Anderson* of *Washington Appellate Defender Association,* for petitioner.

*Linford C. Smith, City Attorney,* and *James William Nelson, Assistant,* for respondent.

SCHOLFIELD, J. — Timothy A. Cochran seeks review of a trial court order on writ of review reversing a court commissioner's decision appointing an expert witness. We reverse the Superior Court.

On November 20, 1990, in Mount Vernon, Washington, petitioner Timothy Cochran was cited for driving while under the influence (DWI) and illegal possession and/or consumption of alcohol. In December 1990, an attorney with the Mount Vernon Public Defender's office filed a notice of appearance on Cochran's behalf in the Mount Vernon Municipal Court.

In late February 1991, the City claims it received a memorandum from defense counsel which listed Dr. Michael Hlastala as a witness. The memo purportedly described Hlastala as an expert on the BAC Verifier DataMaster who would testify to the unreliability of the machine. At a pretrial conference on February 20, 1991, defense counsel gave notice that Hlastala

would be called as an expert. The City claims that on March 4, 1991, defense counsel indicated that Hlastala's fee would be paid from the City's public defender budget.

On March 11, 1991, a hearing was held addressing the propriety of Cochran using Hlastala as an expert witness. The City filed an objection to the hiring of Hlastala with the use of public funds. The City claimed that, under CrRLJ 3.1(f)(1), the public defender could not use government funds to hire an expert without requesting such funds through a motion to the court. The City claimed the defense had presented no evidence that Hlastala's testimony was necessary to' an adequate defense under CrRLJ 3.1(f)(1). Finally, the City claimed that Hlastala's testimony was not generally accepted in the scientific community. Cochran responded with a formal motion for authorization of expert witness fees under CrRLJ 3.1(f), stating that he was indigent and that Hlastala's testimony was necessary for an adequate defense.

In the March 11 hearing, defense counsel claimed that Hlastala was not going to testify about Cochran per se, but was going to testify more about the DataMaster and the problems with the machine. Counsel explained:

> Well there are a number of scientific flaws with this machine, and that's what we need Dr. Hlastala here to testify for. We are not satisfied that that machine accurately measures the person's breath sample, sample of alcohol on the breath. Dr. Hlastala is here to testify about some concerns, about the problems that the machine has, that's why we need him. We need him to put on an adequate defense. As far as whether his testimony is accepted in the scientific community, Dr. Hlastala has published numerous articles, over almost 200 publications in the scientific areas. He's testified for numerous trials on this very issue. He's published a lot of papers. He's certainly an expert, I will have no trouble laying a foundation at trial that he is qualified to testify about this breath machine. As far as the connection with the defendant, that's not really relevant because we're really going to be testifying only about the machine involved in this particular case. And some of the particular problems that it may have. So it's not even relevant whether . . . he meets the clients or not. That has no bearing on this procedure. . . .

The court commissioner then gave his ruling:

> Mr. Arganian, I have to tell you in all candor, I listened to Dr. Hlastala, . . . he's testified several times, I've seen a lot of his information. By in [sic] large, most of what he proposes is preposterous . . . The other side of the coin is that . . . and I have to tell you, that I can't tell you that I can honestly say that I think that Hlastala's testimony is absolutely necessary in order to present an adequate defense. I do think that his testimony may be helpful, and I don't think it requires the showing of absolute necessity. I think it shows that it requires a showing of reasonable necessity in the language that they use. Yeah, they just say necessary. And I do know for a fact that Michael Hlastala testifies at a sufficient number of cases and has been helpful to the defendant in a sufficient number of cases, and I don't think it's unreasonable for you to request his appearance in this particular case. . . . In terms of whether his testimony is accepted in the scientific community[,] I think anytime you can find one scientist who will say up, you'll find another one who will say down. I know he testifies a lot, I know he writes a lot of articles, I know a lot of people with very preposterous ideas that write a lot of articles and get them published, but I'm not really sure that the *Frye* [*v. United States*, 293 F. 1013, 34 A.L.R. 145 (D.C. Cir. 1923)] standard is not being met because I think there's [sic] enough people that are listening to what Hlastala says that you can say that it's at least tentatively accepted if not completely accepted. What you're dealing with is more of a technical issue, I think, than a scientific principle, so I'm not sure if *Frye* would even necessarily be the appropriate standard to apply. We're not looking at a scientific standards [sic] here, what we're looking at is whether Hlastala feels that there is [sic] inherent problems with the fashion, the technical fashion of measurement being used. So I would authorize the appointment of Dr. Hlastala . . . on this particular case.

The City applied for a writ of review in Skagit County Superior Court, claiming that the court commissioner's authorization for payment of Hlastala as an expert witness was erroneous and contrary to law. A writ of review was subsequently issued. The City claimed in part that the court commissioner abused his discretion in appointing Hlastala where there was no evidentiary record establishing that his opinion was based on a theory generally accepted in the scientific community. In response, Cochran filed a motion asserting in part that the Mount Vernon Public Defender had its own budget for

the appointment of expert witnesses, and that the only reason it sought an appointment under CrRLJ 3.1(f) was because of a letter from the city attorney suggesting that the city council would not approve payment for Hlastala.[1] Cochran urged the court to rule that the city attorney's office was precluded from challenging how the Mount Vernon Public Defender's office spends its funds.

The court on review initially affirmed the commissioner's decision permitting funding for Hlastala, ruling there had been no abuse of discretion and that the City had failed to show that the public defender lacked the authority to spend its funds to hire an expert witness. On reconsideration, however, the court changed its ruling. In a decision and order filed October 28, 1991, the court ruled, in part:

> 1) Dr. Michael Hlastala's testimony has not been shown to be accepted in the scientific community; 2) it has not been shown that Dr. Hlastala's testimony is necessary to an adequate defense; and 3) the Public Defender's office may not circumvent the intent and the purpose of CrRLJ 3.1(f)(3) by hiring experts at the expense of the city and paying for those experts from the budget established for them by the City without first obtaining approval from the court.

The Superior Court reversed the commissioner's order appointing Hlastala as an expert witness and further ordered the public defender to cease expending public funds to hire expert witnesses without prior approval from the court.

Cochran sought discretionary review of the Superior Court's decision, claiming that the issue involved was one of substantial public interest under RAP 2.3(d)(3) and that the court had so far departed from the usual course of judicial proceedings as to call for review. *See* RAP 2.3(b)(3). The City conceded that review was justified under RAP 2.3(d)(3). This court therefore granted Cochran's motion for discretionary review.

---

[1]The Mount Vernon Public Defender was created in January 1989. The public defender is given a city council approved budget to work with. Included in the original and subsequent budgets is a line item for "professional services" to hire expert witnesses. In the original budget, this item is budgeted at $3,000 and specifically mentions Dr. Hlastala.

Cochran claims the Superior Court erred in finding, on an inadequate record, that Hlastala's testimony would be inadmissible at trial.

Cochran asserts that it is not necessary to establish fully an expert's qualifications to testify in order to obtain authorization to hire the expert for assistance in preparing a defense. The City responds that the Superior Court correctly found that it was an abuse of discretion for the trial judge to appoint a career expert witness who the judge stated based his " 'preposterous' " testimony on " 'dubious scientific research' ". Brief of Respondent, at 4. The City claims that Hlastala's testimonial evidence has not been accepted in the scientific community, that it is not necessary to an adequate defense, and that Cochran already had access to expert assistance.

CrRLJ 3.1(f) provides as follows, in part:

**(f) Services Other Than Lawyer.**
(1) A lawyer for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in the case may request them by a motion to the court.
(2) Upon finding that the services are necessary and that the defendant is financially unable to obtain them, the court, or a person or agency to whom the administration of the program may have been delegated by local court rule, shall authorize the lawyer to obtain the services on behalf of the defendant. . . .
(3) Reasonable compensation for the services shall be determined and payment directed to the organization or person who rendered them upon the filing of a claim for compensation supported by affidavit specifying the time expended and the services and expenses incurred on behalf of the defendant, . . ..

■ As part of an indigent defendant's constitutional right to effective assistance of counsel, the State must pay for expert services, but only when such services are necessary to an adequate defense. *State v. Melos*, 42 Wn. App. 638, 640, 713 P.2d 138, *review denied*, 105 Wn.2d 1021 (1986). This constitutional right is no broader than the defendant's right to petition for State-paid services under CrRLJ 3.1(f). *See*

*Melos*, at 640.[2] The determination of whether such services are necessary for an adequate defense is a matter within the sound discretion of the trial court. *State v. Mines*, 35 Wn. App. 932, 935, 671 P.2d 273 (1983), *review denied*, 101 Wn.2d 1010 (1984). A discretionary decision of a trial court " 'will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " *Mines*, at 936 (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

The City claims Hlastala's testimony is neither necessary nor relevant because it challenges a device — the BAC Verifier DataMaster — which has been approved by the State Legislature. It further claims Cochran presented no evidence demonstrating the admissibility of Hlastala's testimony.

 The fact that the BAC Verifier DataMaster has been approved for breath testing does not mean its results cannot be challenged. The State must establish that the machine was in proper working order, that if chemicals were used in the testing they were correct and properly used, that the operator was qualified and performed the test correctly, and that the results are accurate. *State v. Straka*, 116 Wn.2d 859, 874-75, 810 P.2d 888 (1991). Once this burden is satisfied, the test results are admissible. *Straka*, at 875. However, a defendant still has the opportunity to attack the test results and may introduce evidence refuting the accuracy and reliability of the test reading. *Straka*, at 875. If a defendant presents refuting evidence, resolution of the issue of reliability and accuracy of the test results are questions for the trier of fact. *Straka*, at 875.

The City further suggests that Cochran made no showing that Hlastala's testimony was admissible because he failed to demonstrate Hlastala's opinions were "based upon an explan-

---

[2] The *Melos* court made this statement in the context of interpreting CrR 3.1(f), which is in pertinent respects identical to CrRLJ 3.1(f).

atory theory generally accepted in the scientific community".[3] Brief of Respondent, at 6. Cochran concedes the record does not establish whether Hlastala's testimony would be admissible at trial, but argues that such a showing is not a precondition for the appointment of an expert. Cochran claims that he need only make a " 'threshold showing' " that Hlastala's services are necessary for an adequate defense. Brief of Appellant, at 19-20.

Appointment of an expert for an indigent defendant is discretionary, and there appears to be no "black letter" rule to apply in determining whether an expert must be appointed. In *Ake v. Oklahoma*, 470 U.S. 68, 83, 84 L. Ed. 2d 53, 105 S. Ct. 1087 (1985), the Court held that where a defendant demonstrates that his sanity would be a "significant factor at trial", the State must, at a minimum, provide the defendant with access to a competent psychiatrist to assist in his defense.

■ One court has held the "significant factor at trial" test is satisfied "when an indigent defendant makes a particularized showing that (1) he will be deprived of a fair trial without the expert assistance, or (2) there is a reasonable likelihood that it would materially assist him in the preparation of his case." *See State v. Parks*, 331 N.C. 649, 656, 417 S.E.2d 467, 471 (1992).

There is certainly a basis for concluding that Hlastala's testimony would assist Cochran. Cochran's stated defense was that the DataMaster was scientifically flawed. The court commissioner believed that given such a defense, Hlastala's testimony was necessary because he believed only an expert could "put on the kind of evidence [needed]" to establish the defense. Clerk's Papers, at 43. While the commissioner stated he believed much of Hlastala's testimony (in prior cases) was

---

[3]The rule cited by the City is derived from *Frye v. United States*, 293 F. 1013, 34 A.L.R. 145 (D.C. Cir. 1923), and provides that "if the reliability of the expert's opinion depends upon the reliability of a *particular scientific principle or technique*, the principle or technique must be one that is generally accepted in the scientific community." (Italics ours.) *See* 5A K. Tegland, Wash. Prac., *Evidence* § 296, at 417 (1989).

preposterous, he did believe Hlastala may be helpful to the defense. The commissioner noted that Hlastala's testimony had been helpful to defendants in past cases, and that CrRLJ 3.1(f) required only reasonable necessity, not absolute necessity. The commissioner stated that it was not unreasonable for the defense to request Hlastala's appearance "in this particular case."[4] Clerk's Papers, at 38.

Division Two of this court has held that a defendant is not entitled to hire an expert witness with public funds where the witness' testimony would not be admissible. *See State v. Sandomingo*, 39 Wn. App. 709, 712, 695 P.2d 592 (1985); *State v. Niemczyk*, 31 Wn. App. 803, 644 P.2d 759 (1982) (polygraph evidence). The rationale for this rule is that the procurement of inadmissible evidence is not necessary to an adequate defense. *Sandomingo*, at 712; *Niemczyk*, at 805-06. However, other courts have rejected the notion that ultimate admissibility of expert testimony is the test for whether appointment of an expert is "necessary". *See, e.g., United States v. Sims*, 617 F.2d 1371, 1375 n.3 (9th Cir. 1980) (admissibility should not be the only consideration in determining necessity; expert's services embrace pretrial and trial assistance to the defense as well as potential trial testimony). *See also* 12 R. Ferguson, Wash. Prac., *Criminal Practice* § 2104, at 396 (1984) (suggesting that defense counsel initially request funds to retain expert for review and consultation only, and request additional funds if initial consultation indicates need to call expert at trial).

The rule stated in *Sandomingo* and *Niemczyk* may be appropriate where an expert is sought solely for trial testimony, and the admissibility of such testimony can be determined at the time appointment is sought. This necessarily implies that defense counsel can clearly articulate the nature of the testimony at the preappointment stage, as well as the scientific validity of the expert's theories. In such cases, it is the expert's trial testimony that the defendant seeks, and

---

[4] Defense counsel had indicated earlier that Hlastala's assistance was sought because the .13 "B and C result" was close to the legal limit of .10.

such services will not be "necessary" if the evidence is clearly inadmissible. In many situations, however, defense counsel seek expert assistance for review and consultation purposes, with future trial testimony being only a possibility. Counsel may not know precisely what expert testimony will be offered — or whether the testimony will ultimately be admissible — before the expert has been appointed. *See* R. Ferguson § 2105, at 398. In these cases, it is unrealistic to require the defendant to establish, prior to appointment of the expert, foundational prerequisites for admission of the testimony.

■ The commissioner here did not abuse his discretion in appointing Hlastala. The commissioner relied in part on his belief that a defendant with the independent means to hire Hlastala would have done so.[5] This is an appropriate factor to consider in making the discretionary determination of necessity under CrRLJ 3.1(f). *See United States v. Sims*, *supra* at 1375 (construing federal statute similar to CrRLJ 3.1(f)(1), court held that proper test for necessity is whether a reasonable attorney would engage such services for a client having the independent financial means to pay for them). The record indicates the commissioner was familiar with Hlastala's testimony and believed his testimony could be helpful, and it appears from the commissioner's comments that Hlastala's testimony had indeed been admitted in prior trials.

■ The City next contends that Cochran had no need for Hlastala's services because the DataMaster technician and a representative from the state toxicologist's office were available to him regarding all aspects of the breath test. The City cites cases from other jurisdictions for the proposition that where a defendant already has access to technical experts by

---

[5]The commissioner stated, in part: "And that's one of the reasons as much as anything that I am granting your request is that . . . if Mr. Cochran had gone to Mr. Weyrich's office or Mr. Reilly's office or Mr. Evans' office or any one of a half dozen other private counsels [sic] in the county with a .13, he probably would have had Dr. Hlastala, and I don't think that it would be appropriate to deny him that opportunity merely because he is indigent. I think that that is probably the most important finding you make, there's no prejudice because of the fact that he has a public defender rather than private counsel. . . ."

means of the State's experts, it is not error to deny a request for appointment of an expert. These cases are not particularly helpful because the issue here is not whether Cochran was properly *refused* expert assistance, but whether the commissioner abused his discretion in appointing an expert for him.

Under CrRLJ 6.13(c)(1), a defendant may request the presence of a Breathalyzer maintenance technician, a BAC Verifier DataMaster technician, or the person responsible for preparing simulator solutions. If no request is made, CrRLJ 6.13(c)(1) provides that certificates in proper form are admissible in lieu of a state expert witness. However, in either case, the State's expert testimony merely provides the foundation for admission of the test results into evidence. *See State v. Straka*, 116 Wn.2d at 875. The City cites no evidence indicating that the State's experts are specialists in scientific or technical aspects of the machines or any possible flaws therein.

The court commissioner did not abuse his discretion in appointing Hlastala as an expert witness in this case. Because Cochran did in fact file a motion with the commissioner pursuant to CrRLJ 3.1(f) for appointment of an expert witness, we do not address whether a public defender with funds allocated for the hiring of experts must obtain court approval pursuant to CrRLJ 3.1(f) before an expert may be hired. This issue was not properly before the Superior Court, and its ruling on the matter was therefore superfluous and nonbinding. Our decision further makes it unnecessary to decide whether the Superior Court erred in issuing a writ of review.

The Superior Court's decision is reversed.

PEKELIS, A.C.J., and BAKER, J., concur.

Review denied at 123 Wn.2d 1003 (1994).