IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| THE STATE OF WASHINGTON, | ) | No. 74862-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| CHAD DANIEL SULLIVAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: November 6, 2017 |
| | ) | |

MANN, J. — Chad Sullivan appeals from his conviction on three counts of assault in the second degree. Sullivan argues that he was deprived of the opportunity to present a defense because the King County Department of Public Defense (DPD) and trial court refused public funding for Sullivan's chosen expert witness. Because the trial court has discretion to provide a "competent" expert for indigent defendants, and nothing prohibits financial considerations in carrying out that discretion, we affirm.

## FACTS

On October 22, 2014, store security at Sportsman's Warehouse in Federal Way observed Sullivan take two canisters of pepper spray from a store shelf and

conceal one of the canisters in his jacket. Sullivan then paid for the second can and left the store. After Sullivan exited the store, he was stopped by the store security officer Martin Roper, and another employee John Silas. Roper and Silas identified themselves and asked Sullivan to return to the store. Sullivan compliantly returned to the store and was escorted to a small room located near the front of the store. Roper took Sullivan's identification and left the room.

Silas remained in the room with Sullivan. While they waited, Silas heard Sullivan say "I can't go back to jail," at which point Sullivan pulled a small folding knife out and used the knife to open the package holding the pepper spray. Silas left the room and closed the door. Roper and a third store employee, Chris McMurray, joined Silas in trying to keep the door closed as Sullivan sprayed pepper spray under the door. Sullivan eventually succeeded in opening the door and during the ensuing struggle pepper sprayed Silas, Roper, and McMurray. After the security officers managed to subdue Sullivan, the police arrived and took him into custody.

The State charged Sullivan with three counts of second degree assault under RCW 9A.36.021(d), for administering a poison or other destructive or noxious substance.

Sullivan's primary defense was that pepper spray was not a noxious substance. Sullivan, who is indigent, applied pretrial for public funding from DPD to hire an expert to testify regarding the nature and effects of pepper spray. Sullivan requested funding to hire Kamran Loghman, an expert located in Washington, D.C., at the rate of $495 an hour for a total of $9,900. Loghman

was an expert in "all aspects of tear gas, pepper sprays and mace." Loghman held five patents for pepper spray formulas, and had years of experience as the chief executive officer of a pepper spray manufacturer that provided pepper spray to law enforcement agencies and the military. He also authored international law enforcement training manuals and published articles on pepper spray and other chemical agents. Sullivan's counsel stated that she had discussed the case with Loghman and that Loghman indicated "he has heard of no other state or federal case in which a serious felony comparable to Assault in the Second Degree has ever been charged based solely on the discharge of [over the counter] pepper spray." Counsel stated she "was unable to locate any other experts as uniquely qualified to provide services in this case."

DPD denied the request explaining that "expert's proposed testimony that there is no other case similarly charged as [defendant]'s case is not reasonable for a defense as it does not bear on whether pepper spray causes bodily harm." Sullivan filed a second request with DPD asserting that Loghman "indicated that, as a holder of 5 patents for pepper spray formulas, he is able to testify that the pepper spray in question in this case was not a noxious substance, similar to a poison . . . [and] that pepper spray does not cause bodily harm." DPD again denied the request explaining that "[b]efore this amount of money can be authorized counsel needs to contact other witnesses or medical professionals who would be able to state an opinion as to whether [over the counter] pepper spray is a 'noxious substance' similar to poison."

Sullivan then resubmitted a third request to for funds to hire Loghman. DPD again denied the request adding that

> The Information does not allege that "noxious" is similar to poison nor does it say it must be harmful to the alleged victims. It says "or noxious substance." Because "noxious" can be defined very broadly I do not believe the request is justified under CrR3.1(f).

Sullivan appealed to the superior court, which also denied the request. The court held, "the contents of commercial pepper spray is readily available," thus "[e]xpertise at the cost suggested by defendant is not reasonably necessary to the presentation of defendant's case." DPD ultimately approved funding to retain a different expert, Rick Walker. Walker charged $25 per hour and was authorized for 20 hours of work for a total of $500.

Walker testified at trial. Walker owns the personal safety training company, Black Dog Training, and is certified by a private pepper spray corporation to perform demonstrations, trainings, and sales. Walker testified he was familiar with the components and the concentration of the pepper spray used in this case. Walker characterized the pepper spray as a "nontoxic temporary incapacitater." He testified to the common reactions to pepper spray, and emphasized the spray can be washed off and has no long-term effects and causes no lasting physical harm to the body. Walker acknowledged there could be long-term effects from pepper spray in cases where an individual had a preexisting condition, though he had not seen that occur. Walker also acknowledged that pepper spray was "designed to hurt."

The three employees Sullivan pepper sprayed also testified. Roper testified the pepper spray hit the side of his face causing him to experience an intense burning sensation for half an hour, as well as difficulty breathing. McMurray testified that after being pepper sprayed he had difficulty keeping his eyes open, that the pain from the burning sensation on his skin was a six on a scale from one to ten, and that he had trouble sleeping that night due to the pain. Silas testified that the pepper spray had caused him to be unable to see, to have difficulty breathing, and that he felt a strong burning sensation on his skin, in his throat, and in his nostrils. All three of the victims testified they had no lasting effects from the pepper spray.

## ANALYSIS
### Expert Opinions

Sullivan argues that he was deprived of the right to present a defense because he was denied funding to retain Loghman. Sullivan argues the trial court improperly considered the cost of his expert, denying Sullivan his right to due process. We disagree.

As part of an indigent defendant's constitutional right to effective assistance of counsel, the State must pay for expert services when such services are necessary to an adequate defense. State v. Mines, 35 Wn. App. 932, 935, 671 P.2d 273 (1983). Whether expert services are necessary for an adequate defense lies within the sound discretion of the trial court. State v. Young, 125 Wn.2d 688, 691, 888 P.2d 142 (1995) (citing Mines, 35 Wn. App. at 935). A discretionary decision of the trial court "'will not be disturbed on review except on

a clear showing of abuse of discretion," meaning the discretion was "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" City of Mount Vernon v. Cochran, 70 Wn. App. 517, 523, 855 P.2d 1180 (1993) (quoting Mines, Wn. App. at 936).

In Washington, CrR 3.1(f) governs the appointment of experts at public expense. Young, 125 Wn.2d at 691. "CrR 3.1(f) incorporates the constitutional right of an indigent defendant to the assistance of expert witnesses." State v. Poulsen, 45 Wn. App. 706, 709, 726 P.2d 1036 (1986) (footnote omitted). CrR 3.1(f) provides, in relevant part:

> (1) A lawyer for a defendant who is financially unable to obtain investigative, expert or other services necessary to an adequate defense in the case may request them by a motion to the court.
> (2) Upon finding the services are necessary and that the defendant is financially unable to obtain them, the court . . . shall authorize the services.

Nothing in CrR 3.1(f) requires the trial court to authorize payment for the witness of the defendant's choosing or precludes a trial court from considering cost in making its decision.

To the contrary, all that is required is that the defendant have access to expertise where necessary to support their defense. For example, in Ake v. Oklahoma, 470 U.S. 68, 83, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985), the Supreme Court addressed whether an indigent criminal defendant attempting to present an insanity defense to a charge of murder had the right to expert opinion at the public's expense. The Court held that, in cases where the defendant can demonstrate to the trial court that his sanity at the time of the offense would be a

significant factor at trial, the "State must, at a minimum, assure the defendant access to a competent psychiatrist" to examine and assist in the presentation of the defense. Ake, 470 U.S. at 83. The Court continued:

> This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own. Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the States the decision on how to implement this right.

Ake, 470 U.S. at 83.

Similarly, in State v. Cuthbert, 154 Wn. App. 318, 225 P.3d 407 (2010), a theft case, the trial court denied the defendants request to hire a forensic accountant, instead offering "to authorize funds for the defense to hire someone to check all the records," an offer the defendant declined. Cuthbert, 154 Wn. App. at 335. The appellate court upheld the trial court's ruling, holding that the trial court properly exercised its discretion in concluding that a forensic accountant was not necessary to prepare a defense, and that an investigator would have sufficed. Cuthbert, 154 Wn. App. at 334-36. Indeed, Sullivan concedes, "a defendant is not denied equal protection when he receives a viable alternative expert, and that there is no right to have an expert of one's choosing."

Sullivan's defense was that pepper spray was not a "destructive or noxious substance" under RCW 9A.36.021(d). In order to present this defense, Sullivan wanted to retain a specialist familiar with the components and effects of pepper spray. Although we agree Loghman was well qualified to testify to the chemical composition and effects of pepper spray, Walker was also qualified.

Sullivan argues Loghman would have testified pepper spray was specifically manufactured not to cause permanent or long-term harm and that Walker was not a viable alternative because he was less qualified to testify to pepper spray manufacturing. Sullivan's argument would require a viable alternative expert to have the exact same qualifications as the one originally requested. Sullivan offers no support for this high standard.

The determination of whether an expert is competent or a viable alternative is within the discretion of the trial court, and will not be overturned absent a clear showing of abuse of discretion. Walker was familiar with the components and effects of pepper spray and was fully qualified to testify to the effects of pepper spray. Walker testified that pepper spray is a "nontoxic temporary incapacitater," emphasizing that the spray can be washed off, has no long-term effects, and causes no lasting physical harm to the body. Sullivan's argument—that the pepper spray was not "destructive or noxious" because it did not cause long-term harm—was addressed by Walker's testimony. Moreover, Walker's testimony was supported by all three victims who testified that they had no lasting harmful effects.

The trial court did not abuse its discretion in authorizing payment for Walker, but not Loghman.

*Statement of Additional Grounds*

In his statement of additional grounds, Sullivan claims that RCW 9A.36.021 is unconstitutional because "the word noxious is so vague that it is unfair to take the one word alone and constitute it an Assault II." The

constitutionality of a statute is an issue of law, which we review de novo. State v. Watson, 160 Wn.2d 1, 5, 154 P.3d 909 (2007). Appellate courts approach a vagueness challenge with a strong presumption in favor of the statute's validity. Haley v. Med. Disciplinary Bd., 117 Wn.2d 720, 739, 818 P.2d 1062 (1991). "If the statute does not involve First Amendment rights, then the vagueness challenge is to be evaluated by examining the statute as applied under the particular facts of the case." Watson, 160 Wn.2d at 6 (quoting State v. Coria, 120 Wn.2d 156, 163, 839 P.2d 890 (1992)). The party challenging a statute's constitutionality on vagueness grounds has the burden of proving its vagueness beyond a reasonable doubt. City of Seattle v. Eze, 111 Wn.2d 22, 26, 759 P.2d 366 (1988).

Under the due process clause of the Fourteenth Amendment, "a statute is void for vagueness if either: (1) the statute does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed; or (2) the statute does not provide ascertainable standards of guilt to protect against arbitrary enforcement." Watson, 160 Wn.2d at 6 (internal quotations omitted). "A statute meets constitutional requirements if persons of ordinary intelligence can understand what the ordinance proscribes, notwithstanding some possible areas of disagreement." Watson, 160 Wn.2d at 7. Impossible standards of specificity are not required as some measure of vagueness is inherent in the use of language. Eze, 111 Wn.2d at 26.

Sullivan fails to prove beyond a reasonable doubt that the statute as applied under the particular facts of the case is unconstitutionally vague. RCW

9A.36.021 prohibits "administer[ing] to or caus[ing] to be taken by another, poison or any other destructive or noxious substance" with the "intent to inflict bodily harm." Bodily harm is defined by RCW 9A.04.110(4)(a) as "physical pain or injury, illness, or an impairment of physical condition." The rest of the terms, though not specifically defined, are all commonly known and used. Persons of ordinary intelligence, viewing the facts in this case, could understand that pepper spray being sprayed in the face of another person would constitute a "poison" or "destructive or noxious substance" causing "injury" or an "impairment of physical condition." While there may be some disagreement, such disagreement is for the finder of fact, and does not rise to the level of constitutional vagueness.

Finally, Sullivan argues he had ineffective assistance of counsel. As Sullivan's allegations rest on facts and matters outside the record, it cannot be considered on direct appeal. State v. Kinzle, 181 Wn. App. 774, 786, 326 P.3d 870 (2014).

*Appellate Costs*

Sullivan also asks that no costs be awarded on appeal. Appellate costs are generally awarded to the substantially prevailing party on review. However, when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2. Here, Sullivan was found indigent by the trial court. If the State has evidence indicating that Sullivan's

financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner.

We affirm.

_____ Mann, J.

WE CONCUR:

_____

_____ Becker, J.